IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

---

LISA CRETSINGER,

      Plaintiff,

v.

CITY OF DE SOTO, IOWA; BRANDON
CARTER; DALLAS COUNTY, IOWA;
DALLAS COUNTY, IOWA SHERIFF'S
OFFICE; JOHN DOE NO. 1 (AKA DALLAS
COUNTY DEPUTY SANCHEZ); AND JOHN
DOES NOS. 2 TO 10,

      Defendants.

No. 4:23-cv-00212-RGE-SBJ

**ORDER RE: DEFENDANTS
DALLAS COUNTY, DALLAS
COUNTY SHERIFF'S OFFICE, AND
DEPUTY SANCHEZ'S MOTION TO
DISMISS COUNTS 1–4, 8–9**

---

## I.    INTRODUCTION

Plaintiff Lisa Cretsinger sues Defendants City of De Soto, Iowa, Brandon Carter, Dallas County, Iowa, Dallas County, Iowa Sheriff's Office, John Doe 1 (also known as Dallas County Deputy Sanchez), and John Does 2 through 10, alleging violations of her federal and state constitutional rights and tort claims under Iowa law. Cretsinger's claims arise from an April 21, 2021 traffic stop during which Cretsinger alleges Carter unlawfully arrested her and Deputy Sanchez took her dog to an animal shelter and told the shelter the dog's owner was unknown.

Deputy Sanchez and Dallas County move to dismiss each of the claims asserted against them, arguing Cretsinger has failed to state claims upon which relief may be granted. Cretsinger resists in part. The Dallas County Sheriff's Office has withdrawn its previously filed motion to dismiss. For the reasons set forth below, the Court grants in part and denies in part Deputy Sanchez and Dallas County's motion to dismiss. As set forth below, Cretsinger's allegations that Deputy Sanchez took her dog to an animal shelter and told the shelter the dog's owner was unknown are sufficient to state a conversion claim against Deputy Sanchez and Dallas County as well as a Fourth

Amendment unreasonable seizure claim against Deputy Sanchez. Insufficient factual allegations support Cretsinger's remaining claims against Deputy Sanchez and Dallas County.

## II.    BACKGROUND

### A.    Factual Background

The Court accepts the following facts as true for the purpose of analyzing the motion to dismiss. *See Brown v. Medtronic, Inc.*, 628 F.3d 451, 459 (8th Cir. 2010).

On April 21, 2021, Brandon Carter was serving as a reserve police officer employed by the City of De Soto Police Department. Pl.'s Amend. Pet. ¶¶ 4, 70, ECF No. 1-1. Shortly after midnight that day, Carter pulled over Lisa Cretsinger while she was driving through De Soto, Iowa. *Id.* ¶¶ 18–22. Carter approached Cretsinger's car and told her she had failed to make a complete stop at a stop sign. *Id.* ¶¶ 22–24. Cretsinger believed she had come to a complete stop. *Id.* ¶ 20. After speaking with Cretsinger, Carter returned to his police cruiser for approximately ten to twenty minutes. *Id.* ¶ 26. Carter returned to Cretsinger's car with what appeared to be a citation. *Id.* Carter did not give the citation to Cretsinger. *Id.* Instead he stuck his head into her car and claimed to smell alcohol. *Id.* ¶ 27. Carter then asked Cretsinger to get out of her car; Cretsinger requested a breathalyzer test. *Id.* ¶ 28. Carter refused the request. *Id.* Cretsinger got out of her car and successfully completed all field sobriety tests Carter conducted. *Id.* ¶¶ 29, 31. During the tests, Cretsinger repeatedly asked to take a breathalyzer test. *Id.* ¶ 31. After the field sobriety tests were complete, Carter administered a breathalyzer test. *Id.* ¶ 32. Cretsinger's breathalyzer test resulted in a blood alcohol content reading of 0.0. *Id.* ¶ 33. Carter then searched Cretsinger's car, finding no alcohol or illegal substances. *Id.* ¶ 35.

Deputy Sanchez, an officer employed by the Dallas County Sheriff's Office, arrived on scene during the encounter between Carter and Cretsinger. *Id.* ¶¶ 7, 36. He parked his cruiser several car lengths behind Carter's. *Id.* ¶ 36. Deputy Sanchez stood by his cruiser facing away from the interaction between Carter and Cretsinger. *Id.* Carter, without cause, pushed Cretsinger

over the hood of her car causing her to fall to the ground. *Id.* ¶ 37. While Cretsinger was on the ground, Carter reached toward his Taser and told Cretsinger he would "ta[s]e" her if she did not cooperate. *Id.* ¶ 38. Cretsinger explained to Carter she fell because he had thrown her. *Id.* After Cretsinger stood up, Carter placed her in handcuffs and advised her that she was under arrest. *Id.* ¶ 39. Cretsinger then asked what would be done with her dog, Norman, a ten-pound Havanese with a collar and tag indicating compliance with Iowa's rabies vaccination requirements who was in a kennel in her car. *Id.* ¶¶ 17, 43. Cretsinger offered to have her brother come retrieve Norman and her car. *Id.* ¶ 43. Carter informed Cretsinger that Deputy Sanchez would take her dog and the car would be towed. *Id.* ¶ 44. Carter then placed Cretsinger in the back of his cruiser before going to speak with Deputy Sanchez. *Id.* ¶¶ 45–46. While sitting in Carter's cruiser, Cretsinger overhead the radio dispatcher asking with confusion why someone with a 0.0 breathalyzer result was being brought in. *Id.* ¶ 46.

Carter then returned to his cruiser and drove Cretsinger to a maintenance shed. *Id.* ¶ 47. Carter removed Cretsinger from his cruiser and ordered her to sit on a seat in the shed. *Id.* ¶¶ 47–49. Cretsinger believed the maintenance shed, which contained sharp gardening and landscaping tools, was a "kill room" or "rape room." *Id.* ¶¶ 49–50. Carter held Cretsinger in the maintenance shed for over an hour. *Id.* ¶ 53. Carter then drove Cretsinger to the Dallas County Jail, arriving around 3:00 a.m. *Id.* ¶¶ 53–54. The Dallas County Jail staff, who were irritated and not cooperative with Carter, did not immediately process Cretsinger. *Id.* ¶ 56. Cretsinger's brother then arrived at the jail and Cretsinger was released around 4:00 a.m. *Id.* ¶ 57.

In the interim, Deputy Sanchez removed Norman from Cretsinger's car and took, or arranged for the transportation of, Norman to a local animal shelter. *Id.* ¶ 65. Deputy Sanchez informed the shelter that the dog had been found loose wandering along the highway and that the owner was unknown. *Id.* ¶ 66. The shelter posted a picture of Norman on social media alongside Deputy Sanchez's statement that the dog's owner was unknown. *Id.* ¶ 68. The post stated the dog

was available for adoption. *Id.*[1] Immediately after being released from the Dallas County Jail, Cretsinger began searching for Norman. *Id.* ¶¶ 69, 148. Cretsinger located the shelter's social media post quoting Deputy Sanchez and stating her dog was available for adoption. *Id.* ¶ 148. Cretsinger retrieved Norman from the animal shelter later that day. *Id.* ¶ 69. The shelter staff informed her they had already received several requests to adopt the dog and Norman would have soon been placed with a new owner had she not intervened. *Id.*

### B.    Procedural Background

Cretsinger filed a nine-count petition in the Dallas County District Court against the City of De Soto, Iowa; the City of De Soto, Iowa Police Department; Brandon Carter; Dallas County, Iowa; the Dallas County, Iowa Sheriff's Office; John Doe 1 (also known as Dallas County Deputy Sanchez); and John Does 2 through 10. *Id.* at 1–25. Subsequently, Cretsinger filed an amended petition. *Id.* at 28–51. Cretsinger's amended petition alleged claims of tortious false arrest, false imprisonment, violations of the Iowa Constitution, and violations of the Fourth Amendment against all Defendants (Count 1); tortious assault and battery and violations of the Fourth Amendment against the City of De Soto, the De Soto Police Department, Carter, and all John Does (Count 2); state law claims of tortious invasion, trespass, unlawful entry into her vehicle, violations of the Iowa Constitution, and violations of the Fourth Amendment against the City of De Soto, the De Soto Police Department, Carter, and all John Does (Count 3); tortious infliction of emotional distress against all Defendants (Count 4); violations of duties under Iowa Code Chapter 80D and

---

[1] The Court infers Norman's collar and vaccination tag were removed prior to him being presented to the animal shelter. *Cf. In re SuperValue, Inc.*, 925 F.3d 955, 964 (8th Cir. 2019) ("[The nonmovant] is entitled to the benefit of all reasonable inferences that may be drawn from the complaint's allegations."); *see also* Iowa Code § 351.35 ("The [rabies] vaccine shall be administered by a licensed veterinarian . . . . The veterinarian shall issue a tag with the certificate of vaccination, and such tag shall at all times be attached to the collar of the dog."); *id.* § 351.37(2) ("The local board of health or law enforcement official shall provide written notice to the owner if the local board of health or law enforcement official can reasonably determine the owner's name and current address by accessing a tag or other device that is on or a part of the dog.").

implementing regulations against the City of De Soto and De Soto Police Department (Count 5); negligent hiring, supervision, and retention against the City of De Soto and De Soto Police Department (Count 6); malicious prosecution against the City of De Soto, De Soto Police Department, and Carter (Count 7); conversion, violations of the Iowa constitution, and violations of the Fourth, Fifth, and Fourteenth Amendments against all Defendants (Count 8); and a failure to expunge against all Defendants (Count 9). *Id.* ¶¶ 97–214.

Defendants removed this action to federal court. Notice of Removal, ECF No. 1. The De Soto Police Department moved to dismiss all claims asserted against it, arguing it was not a separate entity subject to suit from the City of De Soto. Def. De Soto Police Dept.'s Mot. Dismiss, ECF No. 4. Cretsinger filed a notice of non-resistance to the motion. Pl. Resp. Def. De Soto Police Dept.'s Mot. Dismiss, ECF No. 7. The Court granted the De Soto Police Department's motion to dismiss. Text Order Granting Def. De Soto Police Dept.'s Mot. Dismiss, ECF No. 8. Deputy Sanchez and Dallas County now move to dismiss all counts alleged against them under Federal Rule of Civil Procedure 12(b)(6), including Counts 1 through 4, 8, and 9. Defs.' Mot. Dismiss, ECF No. 6.[2] Cretsinger resists in part, arguing each of the counts asserted against Deputy Sanchez and Dallas County state claims upon which relief may be granted with the exception of Counts 2 and 3, which Cretsinger states she did not intend to assert against Deputy Sanchez. Pl.'s Resist. Defs.' Mot. Dismiss, ECF No. 9. The parties did not request oral argument and the Court declines to order it, finding the parties' briefing adequately presents the issues. *See* Fed. R. Civ. P. 78(b); LR 7(c). Having considered the parties' briefing and applicable law, the Court grants in part the motion to dismiss.

Additional facts are set forth below as necessary.

---

[2] The Dallas County Sheriff's Office filed and subsequently withdrew its motion to dismiss. ECF No. 6; Defs.' Reply Br. Supp. Mot. Dismiss 1, ECF No. 10 ("The Defendant withdraws its Motion to Dismiss as it relates to the Dallas County Sheriff's Office."). With no pending motion as to the Dallas County Sheriff's Office, the Court makes no rulings as to that Defendant.

## III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). The Court must accept as true all factual allegations in the complaint, but not its legal conclusions. *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 555–56).

A plausible claim for relief "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A plaintiff must "nudge[ ] their claims across the line from conceivable to plausible, [else] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In ruling on a Rule 12(b)(6) motion to dismiss, a court's review is limited to the complaint, "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *United States ex re. Ambrosecchia v. Paddock Labs., LLC*, 855 F.3d 949, 954 (8th Cir. 2007) (alteration in original) (internal quotation marks and citation omitted).[3] Matters "outside the pleading" are not considered, including "any written or oral

---

[3] Matters of public record include publicly accessible state court documents. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007); *cf. James v. Kruger*, No. 4:17-cv-00303-RGE, 2018 WL

evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings." *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (quoting 5C Charles Alan Wright, et al., Federal Practice and Procedure § 1366); *see also Summers Mfg. Co., Inc. v. Tri-Cnty. AG, LLC*, 300 F. Supp. 3d 1025, 1035 (S.D. Iowa 2017) (collecting cases).

In a removal action, the federal pleading standards govern both a plaintiff's federal and state law claims. *See* Fed. R. Civ. P. 81(c)(1) (providing the Federal Rules of Civil Procedure apply to civil actions removed from state court); *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013) ("We apply federal pleading standards—Rules 8 and 12(b)(6)— to the state substantive law to determine if a complaint makes out a claim under state law." (citations omitted)); *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 938–39 (8th Cir. 2012) ("By including federal claims in [the] state-court complaint, [the plaintiff] subjected [themselves] to the possibility that the defendant would remove the case to federal court, where [the] complaint would be governed by the current federal pleading standard." (internal quotation marks and citations omitted)).

## IV.   DISCUSSION

Deputy Sanchez and Dallas County move to dismiss each claim asserted against them, including those in Counts 1 through 4, 8, and 9. ECF No. 6 ¶ 3. Deputy Sanchez and Dallas County argue Cretsinger fails to state a plausible common law false arrest or false imprisonment claim or Fourth Amendment false arrest claim in Count 1 because she does not allege any facts demonstrating Deputy Sanchez's personal involvement in her arrest. Defs.' Br. Supp. Mot.

---

11272271, at 1 (S.D. Iowa Apr. 4, 2018) ("The Court [] takes judicial notice of the public records available in the electronic case databases maintained by the Iowa Judicial Branch." (citations omitted)).

Dismiss 8–10, ECF No. 6-1.[4] Deputy Sanchez argues Cretsinger fails to state plausible assault and battery, excessive force, or unlawful trespass claims against him in Counts 2 and 3 because she fails to allege with specificity any acts by Deputy Sanchez that would support such claims. *Id.* at 10–11. Deputy Sanchez and Dallas County argue Cretsinger fails to state a plausible claim for intentional infliction of emotional distress in Count 4 based on Deputy Sanchez's conduct related to Norman because Deputy Sanchez's conduct was not outrageous and Cretsinger fails to allege she suffered severe emotional distress as a result. *Id.* at 11–15. Deputy Sanchez and Dallas County argue Cretsinger fails to state plausible claims for conversion or violations of her Fourth Amendment rights in Count 8 based on Deputy Sanchez's conduct related to Norman because Deputy Sanchez's conduct was not improper and Cretsinger fails to allege she was damaged as a result. *Id.* at 15–17.[5] Finally, Deputy Sanchez and Dallas County argue Cretsinger fails to state a cognizable claim against them in Count 9 because a mandamus action is the proper remedy for failing to expunge a record. *Id.* at 17–18.

Cretsinger resists in part. *See* ECF No. 9. She argues Count 1 states plausible common law and Fourth Amendment false arrest claims against Deputy Sanchez and Dallas County as she alleges Deputy Sanchez observed Carter detain and arrest her. ECF No. 9-1 at 8–11.  Cretsinger states she did not intend to assert Counts 2 and 3 against Deputy Sanchez and requests the Court dismiss those counts against him without prejudice. *Id.* at 4–5. Cretsinger argues Count 4 states a plausible claim for intentional infliction of emotional distress against Deputy Sanchez and Dallas

---

[4] Counts 1 and 8 allege Deputy Sanchez and Dallas County violated Cretsinger's rights under the Iowa Constitution. ECF No. 1-1 ¶¶ 106, 203–05. Neither Defendants nor Cretsinger address the state constitutional claims in their briefs in support. *See generally* ECF No. 6-1; Pl.'s Br. Resist. Defs.' Mot. Dismiss, ECF No. 9-1.

[5] Count 8 alleges Deputy Sanchez and Dallas County violated Cretsinger's rights under the Fifth and Fourteenth Amendment. ECF No. 1-1 ¶ 209. Neither Defendants nor Cretsinger address the Fifth and Fourteenth Amendment claims in their briefs in support. *See generally* ECF No. 6-1; ECF No. 9-1.

County because her allegations demonstrate Deputy Sanchez's conduct related to Norman was outrageous and caused her emotional distress. *Id.* at 11–15. Cretsinger argues Count 8 states a plausible conversion and Fourth Amendment seizure claim against Deputy Sanchez and Dallas County as she alleges Deputy Sanchez's conduct was in derogation of her property interests and caused her emotional distress. *Id.* at 15–18. Cretsinger argues Count 9 states a plausible negligence claim against Deputy Sanchez and Dallas County because the allegations demonstrate Defendants breached their duty to expunge her record. *Id.* at 19–20.

Considering Cretsinger's amended petition as a whole, taking all facts alleged as true, and drawing all reasonable inferences in her favor, the Court grants in part Deputy Sanchez and Dallas County's motion to dismiss. Count 1 fails to state a plausible claim for common law false arrest, Fourth Amendment false arrest, or violations of Cretsinger's state constitutional rights against Deputy Sanchez or Dallas County because Cretsinger fails to allege Deputy Sanchez's personal involvement in her arrest and Dallas County cannot be liable absent an underlying claim against Deputy Sanchez. Additionally, the Iowa Supreme Court no longer recognizes a standalone cause of action under the Iowa Constitution. Because Cretsinger did not intend to assert Counts 2 and 3 against Deputy Sanchez, the Court dismisses those counts without prejudice as to Deputy Sanchez. Count 4 fails to state a plausible claim for intentional infliction of emotional distress against Deputy Sanchez or Dallas County because Cretsinger fails to allege facts demonstrating she suffered severe emotional distress as a result of Deputy Sanchez's conduct and Dallas County cannot be held liable absent an underlying claim against Deputy Sanchez.

Some of the claims in Count 8 are sufficient to proceed. Cretsinger sufficiently alleges a claim for conversion against Deputy Sanchez and Dallas County and a Fourth Amendment seizure claim against Deputy Sanchez based on Deputy Sanchez's actions in taking Cretsinger's dog to the animal shelter and telling the shelter the dog's owner was unknown. Cretsinger fails to state a plausible Fourth Amendment claim against Dallas County as she does not allege Deputy Sanchez's

actions were the result of a municipal policy or custom. Cretsinger fails to allege a claim for violations of her state constitutional rights as the Iowa Supreme Court no longer recognizes a standalone claim under the Iowa Constitution. Cretsinger fails to allege a plausible claim under the Fifth or Fourteenth Amendment because she does not allege any facts or advance any arguments in support of such claims and has otherwise alleged a plausible claim under the Fourth Amendment. Finally, Count 9 fails to state a plausible claim against Deputy Sanchez or Dallas County as neither defendant had a duty to expunge Cretsinger's record.

### A.     Count 1

Count 1 of Cretsinger's amended petition alleges claims of tortious false arrest and false imprisonment, violations of the Fourth Amendment, and violations of the Iowa Constitution against Deputy Sanchez and Dallas County. ECF No. 1-1 ¶¶ 97–109. Cretsinger's claims are based on her detention and subsequent arrest. *See id.*

### 1.     False arrest and false imprisonment

The state tort claims of "[f]alse arrest and false imprisonment are legally indistinguishable." *Davis v. Dawson*, 33 F.4th 993, 1001 (8th Cir. 2022) (citing *Kraft v. City of Bettendorf*, 359 N.W.2d 466, 469 (Iowa 1984)). "[F]alse arrest . . . describes the setting for false imprisonment when it is committed by a[] [peace] officer or by one who claims the power to make an arrest." *Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 768 (Iowa 2002) (second and third alterations in original) (internal quotation marks and citations omitted). "The essential elements of the tort of false arrest are (1) detention or restraint against one's will and (2) unlawfulness of the detention or restraint." *Children v. Burton*, 331 N.W.2d 673, 678–79 (Iowa 1983) (citations omitted).

### a.     Deputy Sanchez

Cretsinger fails to set forth sufficient facts to support a plausible claim for false arrest against Deputy Sanchez. "[A]n action for false imprisonment generally runs against the party

doing the actual detention." *Barrera v. Con Agra, Inc.*, 244 F.3d 663, 666 (8th Cir. 2001) (citing *Children*, 331 N.W.2d at 678–82; Restatement (Second) of Torts § 35 (1965)). "A defendant must have personally and actively participated in some aspect of th[e] conduct to be found liable." 32 Am. Jur. 2d False Imprisonment § 35 (2004); *see also* Order Re: Mot. Dismiss 19, *Dunn v. Does 1–22*, No. 4:21-cv-00053-RGE-HCA (S.D. Iowa Oct. 6, 2022), ECF No. 135 (finding an officer's presence at the scene of a plaintiff's arrest without more is insufficient to support a false arrest claim). "Mere passive knowledge of, acquiescence in, or consent to the acts of another, for which one is not otherwise responsible . . . is not sufficient." 32 Am. Jur. 2d False Imprisonment § 35 (citing *Palmentere v. Campbell*, 344 F.2d 234 (8th Cir. 1965); *Dugan v. Midwest Cap Co.*, 239 N.W. 697, 699 (Iowa 1931)).

Cretsinger fails to allege Deputy Sanchez personally and actively participated in her detention or subsequent arrest. *Cf. Barrera*, 244 F.3d at 666; 32 Am. Jur. 2d False Imprisonment § 35. Setting aside his conduct related to Norman, Cretsinger's allegations regarding Deputy Sanchez are that "Deputy Sanchez[] arrived at the scene," "parked his vehicle several car lengths behind Carter's vehicle," then "stood by his cruiser, and faced north, not watching the interaction between Carter and [Cretsinger]." ECF No. 1-1 ¶ 36. Cretsinger does not allege Deputy Sanchez directly interacted with her. *Cf.* Order Re: Mot. Dismiss 19, *Dunn*, No. 4:21-cv-00053, ECF No. 135 ("[The plaintiff] does not allege [the officer] directly interacted with her at all during her arrest. The naked assertion that [the officer] was proximate to [the plaintiff] during her arrest does not give rise to an inference of false arrest." (internal citations omitted)). In her resistance, Cretsinger asks the Court to infer that Deputy Sanchez heard and saw Carter perform the field sobriety and breathalyzer tests, search her vehicle, throw her to the ground, threaten to tase her, and handcuff her. ECF No. 9-1 at 8. Even if the Court were to make such inferences—which are contradicted in part by the allegation that Deputy Sanchez was facing away from the interaction— they would, at most, demonstrate Deputy Sanchez had passive knowledge of Carter's detention

and restraint of Cretsinger. *Cf. Dugan*, 239 N.W. at 699; 32 Am. Jur. 2d False Imprisonment § 35. And, Cretsinger does not allege even passive knowledge by Deputy Sanchez of her prolonged detention at the maintenance shed. *Cf. Dugan*, 239 N.W. at 699. Because Cretsinger has failed to allege Deputy Sanchez personally and actively participated in her detention or arrest, Cretsinger has failed to allege a plausible false arrest claim against Deputy Sanchez. *Cf.* Order Re: Mot. Dismiss 19, *Dunn*, No. 4:21-cv-00053, ECF No. 135; *Dugan*, 239 N.W. at 699; 32 Am. Jur. 2d False Imprisonment § 35 (2004).

> b.     Dallas County

Under the doctrine of respondeat superior, an "employer is vicariously liable for the negligent acts of its employees." *Dickens v. Associated Anesthesiologists, P.C.*, 709 N.W.2d 122, 125 (Iowa 2006) (citation omitted). The doctrine of respondeat superior requires "proof of an employer/employee relationship[] and proof that the injury occurred within the scope of that employment." *Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999) (internal quotation marks and citations omitted). "One of the limitations of the doctrine is that the employer has no liability unless the employee is liable." *Dickens*, 709 N.W.2d at 125 (citing *Peppmeier v. Murphy*, 708 N.W.2d 57, 63–64 (Iowa 2005); *Brosamle v. Mapco Gas Prods., Inc.*, 427 N.W.2d 473, 475 (Iowa 1988)).

Cretsinger fails to state a plausible false arrest claim against Dallas County under the doctrine of respondeat superior. Cretsinger does not allege Carter was acting as an employee of Dallas County at the time of the events in question. *See* ECF No. 1-1 ¶ 4 (alleging Carter was serving as a reserve officer for the City of De Soto Police Department); *Godar*, 588 N.W.2d at 705 (requiring proof of an employer-employee relationship). Cretsinger sufficiently alleges Deputy Sanchez was acting within the scope of his employment as a Dallas County officer. *See* ECF No. 1-1 ¶ 7 (alleging Deputy Sanchez was employed by the Dallas County Sheriff). Cretsinger has failed, however, to allege a plausible false arrest claim against Deputy Sanchez. Absent an

underlying claim against Deputy Sanchez or another Dallas County employee, Cretsinger has failed to state a plausible false arrest claim against Dallas County. *Cf. Dickens*, 709 N.W.2d at 125; *Christiansen v. Eral*, No. 22-1971, 2024 WL 108848, at *7 (Iowa Ct. App. Jan. 10, 2024) (affirming dismissal of a respondeat superior claim against an officer's employer because the officer was exempt from liability on the underlying false arrest claim (citing *Dickens*, 709 N.W.2d at 125)).

Accordingly, the Court dismisses the false arrest claims against Deputy Sanchez and Dallas County in Count I.

### 2. Fourth Amendment violations

Cretsinger alleges Deputy Sanchez and Dallas County "violated [her] rights under Amendment IV of the United States Constitution and [] are liable under 42 U.S.C. § 1983." ECF No. 1-1 ¶ 109. Cretsinger clarifies in her resistance that her Fourth Amendment claim is one of false arrest. ECF No. 9-1 at 8. Under the Fourth Amendment, "a warrantless arrest without probable cause violates an individual's constitutional rights." *Joseph v. Allen*, 712 F.3d 1222, 1226 (8th Cir. 2013) (internal quotation marks and citation omitted).

#### a. Deputy Sanchez

Cretsinger's Fourth Amendment claim against Deputy Sanchez fails for the same reasons as her common law false arrest and false imprisonment claims. "Liability under section 1983 is 'personal,'" meaning "a plaintiff must show each individual defendant's personal involvement in the alleged violation." *Molina v. City of St. Louis*, 59 F.4th 334, 344 (8th Cir. 2023) (quoting *White v. Jackson*, 865 F.3d 1064, 1080–81 (8th Cir. 2017)); *see also Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir. 2006) ("Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." (citation omitted)). An officer who is not personally involved in a plaintiff's arrest cannot be held liable for false arrest under the Fourth Amendment. *See Kingsley v. Lawrence Cnty*, 964 F.3d 690, 700 (8th Cir. 2020) (dismissing a

13

Fourth Amendment false arrest claim against officers who were not "involved in or present for [the plaintiff's] arrest"); *McCabe v. Macaulay*, 515 F. Supp. 2d 944, 962 (N.D. Iowa 2007) (dismissing a Fourth Amendment false arrest claim against an officer who "was not involved in his fellow law enforcement officers' decisions to pursue, arrest and conduct cavity inspections of [the plaintiffs]"); *Deezia v. City of Lincoln*, 350 F. Supp. 3d 868, 881–82 (D. Neb. 2018) (dismissing a Fourth Amendment false arrest claim against officers who merely observed other officers across the street arresting the plaintiff).

Here, Cretsinger fails to sufficiently allege facts demonstrating Deputy Sanchez was personally involved in her arrest or prolonged detention. *Cf. Molina*, 59 F.4th at 344. As set forth above, Cretsinger's allegations regarding Deputy Sanchez's involvement in her arrest are limited and do not involve his active participation in her arrest. *See supra* Section IV.A.1.a (citing ECF No. 1-1 ¶ 36). Deputy Sanchez's mere presence and observation of Cretsinger's arrest is insufficient to demonstrate Deputy Sanchez's personal involvement in the arrest. *Cf. McCabe*, 515 F. Supp. 2d at 962 (dismissing a false arrest claim against an officer who merely "saw [the plaintiffs'] arrests from a distance, [but] did not participate in those arrests"); *Deezia*, 350 F. Supp. 3d at 881–82 (dismissing a false arrest claim against officers who "were standing on the northeast corner of [the intersection] when they observed [other officers] struggling with [the plaintiff] on the northwest corner of the intersection"). Cretsinger also does not allege Deputy Sanchez discussed the arrest with Carter before it occurred or instructed Carter to effectuate an arrest. *See* ECF No. 1-1 ¶ 46 (alleging Carter went to speak with Deputy Sanchez only after placing Cretsinger in his vehicle); *cf. McCabe*, 515 F. Supp. 2d at 962 (noting the defendant officer did not "discuss the arrests with anyone before they occurred and at no time gave instructions to any person as to how [the plaintiffs] should be treated"). The Court therefore finds Cretsinger has failed to state a plausible Fourth Amendment false arrest claim against Deputy Sanchez. *Cf. Molina*, 59 F.4th at 344; *McCabe*, 515 F. Supp. 2d at 962; *Deezia*, 350 F. Supp. 2d at 881–82.

b.  Dallas County

"It is well established that a municipality cannot be liable under § 1983 under a respondeat superior theory, that is, solely because it employs a tortfeasor." *Robbins v. City of Des Moines*, 984 F.3d 673, 681 (8th Cir. 2021) (internal quotation marks and citations omitted). "A municipality may only be liable for a constitutional violation resulting from (1) an official municipal policy[,] (2) an unofficial custom, or (3) failure to train or supervise." *Id.* at 681–82 (citation omitted).

Cretsinger's amended petition is devoid of any allegations regarding a policy, custom, or failure to train or supervise by Dallas County. *Compare* ECF No. 1-1 ¶ 88 (alleging the causes of action asserted against the City of De Soto and De Soto Police Department "result[ed] from the officially sanctioned customs or policies of those organizations"), *with* ECF No. 1-1 (failing to allege the causes of action against Dallas County resulted from an officially sanctioned custom or policy). In her resistance, Cretsinger asserts Dallas County has a policy, procedure, and custom of assisting municipal law enforcement by providing "back-up" to traffic stops as well as "a policy and procedure of accepting De Soto arrestees at the Dallas County jail." ECF No. 9-1 at 11. Cretsinger's assertions—which are not supported by citations to the amended petition—are matters "outside the pleading." *Gibb*, 958 F.2d at 816 (declining to consider evidence "that provides some substantiation for and does not merely reiterate what is said in the pleadings"). The Court therefore declines to consider them. *Cf. id.*

Further, "[w]ithout a constitutional violation by the individual officers, there can be no § 1983 or *Monell* . . . liability." *See Stockley v. Joyce*, 963 F.3d 809, 823 (8th Cir. 2020) (omission in original) (citation omitted); *see also Johnson v. City of Ferguson, Missouri*, 926 F.3d 504, 506 (8th Cir. 2019) ("This circuit has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." (internal quotation marks and citation omitted)). Cretsinger has failed to state a plausible Fourth Amendment claim against Deputy Sanchez. Cretsinger also fails to state a plausible Fourth

Amendment claim against any other Dallas County employee, including the Dallas County Jail staff who processed Cretsinger upon her arrival at the jail. *See* ECF No. 9-1 at 11 (arguing Dallas County is subject to *Monell* liability because the Dallas County Jail had a policy of accepting De Soto inmates); *cf. White v. Pauly*, 580 U.S. 73, 80 (2017) ("No settled Fourth Amendment principle requires [an] officer to second-guess the earlier steps already taken by his or her fellow officers."). Cretsinger does not allege that Carter, the only other officer alleged to have participated in her arrest, is an employee of Dallas County. *See* ECF No. 1-1 ¶ 4 (alleging Carter was serving as a reserve officer for the City of De Soto Police Department). Absent an underlying constitutional violation by Deputy Sanchez or any other Dallas County employee, there can be no *Monell* liability against Dallas County. *Cf. Stockley*, 963 F.3d at 823; *Johnson*, 926 F.3d at 506. Cretsinger has therefore failed to state a plausible Fourth Amendment false arrest claim against Dallas County.

Accordingly, the Court dismisses the Fourth Amendment false arrest claims against Deputy Sanchez and Dallas County in Count 1.

### 3.    Violations of the Iowa Constitution

Cretsinger alleges Deputy Sanchez and Dallas County's "unlawful arrest and false imprisonment . . . violated [her] rights pursuant to the Iowa Constitution article I section 8." ECF No. 1-1 ¶ 106. The Iowa Supreme Court "no longer recognize[s] a standalone cause of action for money damages under the Iowa Constitution unless authorized by common law, an Iowa statute, or the express terms of a provision of the Iowa Constitution." *Burnett v. Smith*, 990 N.W.2d 289, 307 (Iowa 2023) (declining to recognize a constitutional tort claim under article I, section 8 of the Iowa Constitution). *Burnett* is controlling and precludes Cretsinger from moving forward with her state constitutional claim against Deputy Sanchez and Dallas County. *See Venckus v. City of Iowa City*, 990 N.W.2d 800, 803 (Iowa 2023) (applying *Burnett* to find "[t]he plaintiff's constitutional tort claims cannot go forward" under article I, section 8); *see also Galanakis v. City of Newton, Iowa*, No. 4:23-cv-00044-SHL-SBJ, 2024 WL 606235, at *12 (S.D. Iowa Feb. 8, 2024) (finding

*Burnett* applies retroactively and may be raised sua sponte).

Accordingly, the Court dismisses the state constitutional claim against Deputy Sanchez and Dallas County in Count 1.

### B.      Counts 2 and 3

Count 2 of Cretsinger's amended petition alleges assault, battery, and violations of the Fourth Amendment against Carter, the City of De Soto, and "all John Does." ECF No. 1-1 at 41. Count 3 alleges tortious invasion, trespass, and unlawful entry into Cretsinger's vehicle and violations of the Fourth Amendment against Carter, the City of De Soto, and "all John Does." *Id.* at 42. Deputy Sanchez interprets the amended petition's references to "all John Does" as meaning Cretsinger asserts Counts 2 and 3 against him. *See* ECF No. 6-1 at 10–11. In her resistance, Cretsinger states "[she] did not intend to, and does not now, assert claims under Count 2 . . . or Count 3 . . . against John Doe No. 1 (Dallas County Deputy Sanchez)." ECF No. 9-1 at 5. Cretsinger "requests that either (i) [she] be granted permission to amend Counts 2 and 3 to exclude John Doe No. 1 from the claim . . . or (ii) the Court dismiss Counts 2 [and] 3 against John Doe No. 1 (Deputy Sanchez) without prejudice." *Id.* (citation omitted). Based upon Cretsinger's representations, the Court dismisses without prejudice any claims asserted against Deputy Sanchez in Counts 2 and 3.

### C.      Count 4

Count 4 of Cretsinger's amended petition alleges a claim of intentional infliction of emotional distress against Deputy Sanchez and Dallas County. ECF No. 1-1 ¶¶ 136–52. "A claim of intentional infliction of emotional distress requires the plaintiff to prove: (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants intentionally caused, or recklessly disregarded the likelihood of causing, severe or extreme emotional distress to the plaintiff; (3) the plaintiff in fact suffered severe or extreme emotional distress; and (4) the defendants' extreme and outrageous conduct was the actual and proximate cause of the severe or extreme emotional

distress." *White v. Harkrider*, 990 N.W.2d 647, 652 (Iowa 2023) (citations omitted).

In her resistance, Cretsinger identifies several instances of conduct by Dallas County personnel that she asserts were outrageous, including 1) that Deputy Sanchez "did nothing" despite observing and hearing Carter throw her across the hood of her car, threaten to "ta[s]e" her, and arrest her; 2) that Deputy Sanchez "took [her] dog and told the shelter that the dog was found w[a]ndering around and that the owner was not known;" and 3) that the Dallas County jail officials booked and processed Cretsinger despite knowing she had a 0.0 breathalyzer and a search of her vehicle had produced nothing. ECF No. 9-1 at 12–13. The only act Cretsinger alleges caused her emotional distress, however, was Deputy Sanchez taking Norman to the animal shelter and claiming that his owner was unknown. *See* ECF No. 1-1 ¶¶ 143–52. Cretsinger alleges Deputy Sanchez "took such actions intending to cause [her] emotional distress and damage;" that finding the social media post by the animal shelter containing the false information supplied by Deputy Sanchez "caused [her] emotional distress;" and that "[she] was damaged by [Deputy Sanchez's] knowing and intentional infliction of emotional distress." *Id.* ¶¶ 147–49.

While Deputy Sanchez's alleged conduct is egregious, Cretsinger's allegations are insufficient to demonstrate she suffered severe or extreme emotional distress under the applicable standard. *Cf. White*, 990 N.W.2d at 652. Severe or extreme emotional distress is present "only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it." *Smith v. Iowa State Univ. of Sci. & Tech.*, 851 N.W.2d 1, 30 (Iowa 2014) (quoting Restatement (Second) of Torts § 46 cmt. J (1965)). A plaintiff must "establish more than the fact that they felt bad for a period of time." *Ette ex rel. Ette v. Linn-Mar Cmty. Sch. Dist.*, 656 N.W.2d 62, 71 (Iowa 2002) (internal quotation marks and citation omitted). Those cases "that have found substantial evidence of emotional harm have had direct evidence of either physical symptoms of the distress or a clear showing of a notably distressful mental reaction caused by the outrageous conduct." *Smith*, 851 N.W.2d at 30 (internal quotation marks and citation omitted).

Cretsinger argues "[t]he question of the 'severity' or 'extremeness' is one for a trier of fact and not a question to be decided on the pleadings." ECF No. 9-1 at 14. However, as plead, her allegation that she experienced "emotional distress" is insufficient to submit a plausible claim for intentional infliction of emotional distress to a jury. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *cf. Kruse v. Repp*, 611 F. Supp. 3d 666, 723–24 (S.D. Iowa 2020) (dismissing the plaintiff's intentional infliction of emotional distress claim at the pleading stage because the plaintiffs' petition made only "boilerplate" assertions "devoid of any substantive factual allegation that [the plaintiffs] have suffered the kind of emotional distress that is redressable by the law").

Cretsinger does not allege her emotional distress was "severe or extreme." *Cf. White*, 990 N.W.2d at 652. Nor does she allege Deputy Sanchez's actions caused her any "physical symptoms" or "notably distressful mental reactions." *Smith*, 851 N.W.2d at 31; *Mastin v. Navistar, Inc.*, No. 4:20-cv-00362-RGE-CFB, 2021 WL 1726893, at *11 (S.D. Iowa Mar. 29, 2021) (dismissing the plaintiff's intentional infliction of emotional distress claim at the pleading stage because the plaintiff did "not describe physical symptoms or notably distressful mental reactions" or otherwise "allege facts sufficient to demonstrate severe emotional distress" (internal quotation marks and citations omitted)). Taking the facts alleged in the amended petition as true, Cretsinger at most alleges that she "felt bad for a period of time." *Smith*, 851 N.W.2d at 30. Cretsinger has therefore failed to allege sufficient facts to state a plausible intentional infliction of emotional distress claim against Deputy Sanchez.

As noted above, the only act by a Dallas County employee Cretsinger alleges caused her emotional distress was Deputy Sanchez taking Norman to the animal shelter and telling the shelter the dog's owner was unknown. Because Cretsinger has failed to allege sufficient facts to support a claim for intentional infliction of emotional distress against Deputy Sanchez based on this conduct, Cretsinger's claim against Dallas County also fails. *See Dickens*, 709 N.W.2d at 125

("One of the limitations of the [respondeat superior] doctrine is that the employer has no liability unless the employee is liable.").

Accordingly, the Court dismisses Cretsinger's claim for intentional infliction of emotional distress against Deputy Sanchez and Dallas County in Count 4.

### D.    Count 8

Count 8 of Cretsinger's amended petition alleges claims of conversion, violations of the Fourth, Fifth, and Fourteenth Amendments, and violations of the Iowa Constitution against Deputy Sanchez and Dallas County. ECF No. 1-1 ¶¶ 198–209. Cretsinger's claims are based on Deputy Sanchez's actions in removing Norman from her car, taking him to the animal shelter, and telling the shelter that his owner was unknown. *Id.*

#### 1.    Conversion

"Conversion . . . is the wrongful control or dominion over another's property contrary to that person's possessory right to the property." *Larew v. Hope Law Firm, P.L.C.*, 977 N.W.2d 47, 61 (Iowa 2022) (internal quotation marks and citations omitted). "The essential elements of conversion are: 1) ownership by the plaintiff or other possessory right in the plaintiff greater than that of the defendant; 2) exercise of dominion or control over [property] by defendant inconsistent with, and in derogation of, plaintiff's possessory rights thereto; and 3) damage to the plaintiff." *In re Est. Of Bearbower*, 426 N.W.2d 392, 394 n.1 (Iowa 1988) (citations omitted).

##### a.    Deputy Sanchez

Cretsinger has set forth sufficient factual allegations to state a plausible claim for conversion against Deputy Sanchez. *Cf. id.* Cretsinger alleges she is Norman's owner and that the dog constitutes her property under Iowa Code § 351.25. ECF No. 1-1 ¶¶ 63–64, 67 (alleging the dog was over six months of age and had a collar and tag indicating compliance with Iowa's rabies vaccination requirements); *see* Iowa Code § 351.25 ("[A]ll dogs over [six months of] age and wearing a collar with a valid rabies vaccination tag attached to the collar[] shall be deemed

property."). She alleges Deputy Sanchez exercised dominion or control over Norman in derogation of her possessory rights when Deputy Sanchez removed Norman from her vehicle, transported him to the animal shelter, and made the knowingly false statements that he was found running loose along the highway and that his owner was unknown. ECF No. 1-1 ¶¶ 65, 200–01. Cretsinger alleges she "was damaged financially and emotionally as a proximate cause of the unlawful conversion of her property." *Id.* ¶ 206; *see also id.* ¶ 148 (alleging she experienced emotional distress upon finding the animal shelter's social media post containing the false representations by Deputy Sanchez).

Deputy Sanchez argues his dominion or control of the dog was not improper or "in derogation of" Cretsinger's possessory rights in light of Officer Carter's arrest of Cretsinger. ECF No. 10 at 4; *see also Larew*, 977 N.W.2d at 61 ("Conversion . . . is the wrongful control or dominion over another's property contrary to that person's possessory right to the property." (internal quotation marks and citations omitted)); *Slocum v. Firstar Bank Cedar Rapids*, No. 00-1070, 2002 WL 1070943, at *5 (Iowa Ct. App. May 31, 2002) (finding the word "wrongful" is synonymous with the phrase "in derogation of [the plaintiff's] possessory right"). Deputy Sanchez relies on *Goldman v. Williams*, 101 F. Supp. 3d 620 (S.D. Tex. 2015), and *Askew v. Clark County*, 519 F. Supp. 3d 817 (D. Nev. 2021). ECF No. 10 at 4; ECF No. 6-1 at 16.

In *Goldman*, the court found an officer's decision to have animal control pick up the dog of an individual who was arrested during a traffic stop was reasonable because "[t]he dog needed to be cared for" and "could not stay in the car, be left on the side of the road, or accompany [the owner] to jail." 101 F. Supp. 3d at 660. There, the court noted the officer "offered to let [the owner] have someone she knew take care of the dog, but [the owner] did not know of anyone who could" such that the officer's "only choice was to send the dog to animal control." *Id.* In *Askew*, the defendant officer seized the plaintiff's dogs pursuant to a county ordinance after developing

probable cause to believe the dogs were being treated cruelly. 519 F. Supp. 3d at 829, *vacated in part on other grounds*, *Askew v. Cnty. of Clark*, No. 21-15310, 2022 WL 3585714 (9th Cir. Aug. 22, 2022). The dogs were then transported to an animal shelter, which held the dogs and eventually adopted them out pursuant to court orders. *See id.* at 821, 829.

Here, Cretsinger alleges she "offered to have her brother come to retrieve the [v]ehicle and Norman." ECF No. 1-1 ¶ 43. Thus, unlike in *Goldman*, transporting Cretsinger's dog to the local animal shelter was not Deputy Sanchez's only option. *Cf. Goldman*, 101 F. Supp. 3d at 660. Nor did Deputy Sanchez transport Normal to animal control for safekeeping; Deputy Sanchez took Normal to a shelter and falsely represented that the dog's owner was unknown and that the dog was found wandering along the highway. ECF No. 1-1 ¶¶ 66–67, 201. Neither *Goldman* nor *Askew* involve false representations by officers. *Cf. Goldman*, 101 F. Supp. 3d at 660 (finding the officer was acting pursuant to his caretaking functions and silent as to false statements by the officer); *Askew*, 519 F. Supp. 3d at 829 (finding the officer had probable cause to seize the dogs and silent as to false statements by the officer). Cretsinger's allegations that Deputy Sanchez falsely represented that the dog's owner was unknown and that the dog was found wandering along the highway, along with the inference that Norman's collar and tag were removed prior to being received by the animal shelter, are sufficient to demonstrate Deputy Sanchez's actions were improper in derogation of Cretsinger's possessory interest in the dog. *Cf. In re Bearbower*, 426 N.W.2d at 394 n.1; *Larew*, 977 N.W.2d at 61.

Deputy Sanchez also argues that "[e]ven if [Cretsinger's] dog was really placed on an adoption list shortly after the wrongful arrest, there was no damage done to her as her dog was safely returned to her." ECF No. 6-1 at 17. Under Iowa law, "the reasonable and necessary expenses incurred in recovering the property are a proper element of damage," *State v. Taylor*, 506 N.W.2d 767, 768 (Iowa 1993), as are mental pain and suffering damages incurred by plaintiffs upon discovering their property is missing. *See Becker v. Longinaker*, No. 09-0833,

2010 WL 1578400, at *7–9 (Iowa Ct. App. Apr. 21, 2010) (upholding the award of past mental pain and suffering damages incurred by the plaintiffs upon discovering their horses were missing). Here, Cretsinger alleges she "was damaged financially and emotionally as a proximate cause of the unlawful conversion of her property" and that she experienced emotional distress upon discovering the animal shelter's post containing the false representations by Deputy Sanchez. ECF No. 1-1 ¶¶ 148, 206. Cretsinger's allegations are sufficient to demonstrate she was damaged by Deputy Sanchez's actions. *Cf. Becker*, 2010 WL 1578400, at *9. Accordingly, the Court finds Cretsinger has stated a plausible claim of conversion against Deputy Sanchez.

b.      Dallas County

An "employer is vicariously liable for the negligent acts of its employees" under the doctrine of respondeat superior. *Dickens*, 709 N.W.2d at 125 (citation omitted). As noted previously, "the doctrine of respondeat superior rests on two elements: proof of an employer/employee relationship, and proof that the injury occurred within the scope of that employment." *Godar*, 588 N.W.2d at 705 (internal quotation marks and citations omitted). Dallas County argues that to the extent Cretsinger "claims [it] should somehow be responsible under the doctrine of respondeat superior, then [she] has [] not met the pleading standards outlined in *Iqbal*." ECF No. 6-1 at 17.

Cretsinger's amended petition does not use the term "respondeat superior." *See generally* ECF No. 1-1. However, "[t]he well-pleaded facts alleged in the complaint, not the legal theories of recovery . . . must be viewed to determine whether the pleading party provided the necessary notice and thereby stated a claim." *Topchian*, 760 F.3d at 848 (internal quotation marks and citations omitted). Here, the amended petition alleges that "Deputy Sanchez[] during the events described [in the amended petition] is believed to have been a Deputy employed by the County Sheriff with jurisdiction in the areas of De Soto, Iowa and Dallas County, Iowa" and that Deputy Sanchez "was a uniformed officer in a law enforcement cruiser at the time of the events." ECF

No. 1-1 ¶ 7. The amended petition further alleges "[t]he County and County Sheriff are liable for the acts of Deputy Sanchez" and that each of the defendants, including the "municipal defendants," are liable for conversion. *Id.* ¶¶ 13, 208. Cretsinger's allegations give Dallas County "fair notice of the nature and basis or grounds for [her respondeat superior] claim" and state a plausible claim against Dallas County because they allege both that Deputy Sanchez is an employee of Dallas County and that Deputy Sanchez's actions were taken within the scope of his law enforcement duties. *Tophian*, 760 F.3d at 848; *cf. Godar*, 588 N.W.2d at 705.

Accordingly, Cretsinger may proceed on her conversion and respondeat superior claims against Deputy Sanchez and Dallas County in Count 8.

### 2.    Fourth, Fifth, and Fourteenth Amendments

Cretsinger alleges Deputy Sanchez and Dallas County are liable under § 1983 for violating her rights under the Fourth, Fifth, and Fourteenth Amendments based upon Deputy Sanchez's unlawful seizure of her dog. ECF No. 1-1 ¶¶ 198–209.

### a.    Fourth Amendment

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "A seizure of property occurs when there is some meaningful interference with a person's possessory interests in that property." *Andrews v. City of West Branch*, 454 F.3d 914, 918 (8th Cir. 2006) (citation omitted); *see also United States v. Va Lerie*, 424 F.3d 694, 702 (8th Cir. 2005) ("[T]he seizure standard prohibits the government's conversion of an individual's private property, as opposed to the mere technical trespass."). If a seizure has occurred, the question becomes whether the seizure was reasonable under the circumstances. *Andrews*, 454 F.3d at 918 ("The Fourth Amendment guards against unreasonable searches and seizures."). In assessing the reasonableness of a seizure, the court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests

24

alleged to justify the intrusion." *United States v. Jacobsen*, 466 U.S. 109, 125 (1984) (citation omitted). Further, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment[]." *Id.* at 124.

Here, Cretsinger has set forth sufficient factual allegations to state a plausible claim that Deputy Sanchez violated her Fourth Amendment right to be free of unreasonable seizures. Cretsinger's dog constitutes her property for purposes of the Fourth Amendment. *See* ECF No. 1-1 ¶¶ 63–64, 67, 200–01 (alleging Cretsinger is the owner of the dog); *Andrews*, 454 F.3d at 918 ("A dog is considered property for Fourth Amendment purposes."). Cretsinger alleges Deputy Sanchez removed Norman from her vehicle, transported him to the animal shelter, and falsely represented to the shelter that his owner was unknown. ECF No. 1-1 ¶¶ 65–67. The Court also infers from the allegations that Norman's collar and tag were removed prior to his presentment to the animal shelter. *See id.* ¶¶ 17, 63, 67–68; Iowa Code §§ 351. 35, .37(2). Cretsinger's allegations—and the reasonable inferences drawn from them—are sufficient to demonstrate Deputy Sanchez meaningfully interfered with her possessory interest in the dog as to constitute a seizure. *Cf. Andrews*, 454 F.3d at 918.

Cretsinger also sufficiently alleges that Deputy Sanchez's conduct was unreasonable. *Cf. Jacobsen*, 466 U.S. at 124–25. "In assessing reasonableness of a warrantless seizure of a dog, [the court] must balance the nature and quality of the intrusion . . . against the importance of the governmental interest alleged to justify the intrusion." *LeMay v. Mays*, 18 F.4th 283, 287 (8th Cir. 2021) (internal quotation marks and citation omitted). One such valid governmental interest is in the protection of life and property. *Id.*; *see also United States v. Mayfield*, 161 F.3d 1143, 1145 (8th Cir. 1998) (finding an officer's impoundment and search of an arrestee's vehicle is justified in part by the government interest in protecting the arrestee's property while it remains in police custody). Here, Cretsinger has sufficiently alleged Deputy Sanchez acted in derogation

of—as opposed to in protection of—her possessory interests in her dog when the dog's collar and tag were removed and Deputy Sanchez took the dog to the animal shelter and told the shelter the dog's owner was unknown. Even assuming the original seizure was reasonable, the alleged acts that followed were not. Accordingly, the Court finds Cretsinger has plausibly alleged Deputy Sanchez's actions violated her Fourth Amendment right to be free from unreasonable seizures.

The same cannot be said for Cretsinger's Fourth Amendment claim against Dallas County. As noted above, "a municipality cannot be liable under § 1983 under a respondeat superior theory" and can instead "only be liable for a constitutional violation resulting from (1) an official municipal policy[,] (2) an unofficial custom, or (3) failure to train or supervise." *Robbins*, 984 F.3d at 681–82 (internal quotation marks and citations omitted). Cretsinger's amended petition is devoid of any allegations regarding a policy, custom, or failure to train or supervise by Dallas County—either related to Deputy Sanchez's seizure of Cretsinger's dog or in general. *See generally* ECF No. 1-1. Absent such allegations, Cretsinger fails to plausibly allege a Fourth Amendment unreasonable seizure claim against Dallas County. *Cf. Robbins*, 984 F.3d at 681–82.

Accordingly, Cretsinger may proceed on her Fourth Amendment claim in Count 8 against Deputy Sanchez. The Court dismisses the Fourth Amendment claim against Dallas County in Count 8.

### b.      Fifth and Fourteenth Amendments

Cretsinger alleges Deputy Sanchez and Dallas County "are liable under 42 U.S.C. § 1983 for violations of [her] rights under the United States Constitution Amendments . . . V and XIV." ECF No. 1-1 ¶ 209. Cretsinger also states in the caption of Count 8 that Deputy Sanchez and Dallas County violated her rights under the Fifth and Fourteenth Amendments. *Id.* at 49. The remainder of Cretsinger's amended petition fails to specify which provisions of the Fifth or Fourteenth Amendments Cretsinger claims were violated or which legal theories of recovery she is relying on. *See generally* ECF No. 1-1. "The essential function of a complaint under the Federal Rules of

Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim." *Topchian*, 760 F.3d at 848 (internal quotation marks and citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Cretsinger's conclusory statements that Deputy Sanchez and Dallas County violated her rights under the Fifth and Fourteenth Amendments are insufficient to place Deputy Sanchez and Dallas County on notice of the nature of the claims she is asserting against them. *Cf. Topchian*, 760 F.3d at 848; *Iqbal*, 556 U.S. at 678.

Further, the Court's own review of Cretsinger's factual allegations has failed to identify a plausible claim under either the Fifth Amendment or Fourteenth Amendment. *Cf. Topchian*, 760 F.3d at 849 ("[T]he court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory." (internal quotations marks and citation omitted)). "[W]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment . . . must be the guide for analyzing [such] claims." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (second alteration in original) (internal quotation marks and citation omitted). Here, Cretsinger has plausibly alleged Deputy Sanchez's conduct implicates the Fourth Amendment's prohibition on unreasonable seizures. Accordingly, the Fifth Amendment and Fourteenth Amendment, including the Fourteenth Amendment's substantive due process protections, are inapplicable. *Cf. id.* at 843 (finding substantive due process analysis is "inappropriate" if the plaintiff's claim is "covered by" the Fourth Amendment); *Folkers v. City of Waterloo*, 582 F. Supp. 2d 1141, 1154–55 (N.D. Iowa 2008) (finding the Fourth Amendment's prohibition on unreasonable seizures not the Fourteenth Amendment's substantive due process analysis applied to the plaintiff's claim that her dog was unlawfully detained).

Accordingly, the Court dismisses Cretsinger's Fifth Amendment and Fourteenth Amendment claims against Deputy Sanchez and Dallas County in Count 8.

### 3.     Iowa Constitution

Cretsinger alleges Deputy Sanchez's conduct in taking Norman to the animal shelter and stating the dog's owner was unknown violates her rights under the Iowa Constitution. ECF No. 1-1 ¶¶ 203–05. As noted previously, the Iowa Supreme Court "no longer recognizes a standalone cause of action for money damages under the Iowa Constitution." *Burnett*, 990 N.W.2d at 307; *see also Venckus*, 990 N.W.2d at 803. Accordingly, the Court dismisses Cretsinger's state constitutional claims against Deputy Sanchez and Dallas County in Count 8. *Cf. Burnett*, 990 N.W.2d at 307.

### E.     Count 9

Count 9 of Cretsinger's amended petition asserts a claim for "[f]ailure to [e]xpunge" against Deputy Sanchez and Dallas County. ECF No. 1-1 at 50. Cretsinger alleges "[a]n order of expungement was entered by the Dallas County Court;" "Defendants have failed to comply with that expungement order;" and she "suffered employment questioning and emotional distress from a background check revealing information regarding [her arrest]." *Id.* ¶¶ 211–13. Cretsinger clarifies in her resistance that she is asserting a common law negligence claim based on the failure to expunge. *See* ECF No. 9-1 at 19.

"Iowa law does not presume negligence." *Singh v. McDermott*, --- N.W.3d ---, 2024 WL 387553, at *2 (Iowa Feb. 2, 2024) (internal quotation marks and citation omitted). To recover, a plaintiff must "establish that the defendant owed a duty of care." *Id.* (internal quotation marks and citation omitted). Cretsinger argues "[t]he order of expungement issued by the Dallas County District Court created a duty for the Dallas County Defendants to take the acts of expungement ordered in accordance with Iowa Code § 901C.1 for [her] protection." ECF No. 9-1 at 19. The expungement order, however, imposes a duty on the Dallas County Clerk of Court to expunge Cretsinger's record. Def.'s Ex. A Supp. Reply Br. 1, ECF No. 10-1 ("[T]he Clerk of Court shall expunge the record in the above captioned matter pursuant to section 901C.2, the Code."); *see also*

Iowa Code § 901C.2(2) ("The record in a criminal case expunged under this section is a confidential record exempt from public access under section 22.7 but shall be made available by the clerk of the district court.").[6] The Dallas County Clerk of Court is an employee of the State of Iowa, not Dallas County. *See* Iowa Code § 602.11101(1)(e)(1) ("The state shall assume the responsibility for and the costs of the officers of the clerks of the district court on July 1, 1986."). Because the expungement order did not impose a duty on Dallas County or Deputy Sanchez to expunge her record, Cretsinger has failed to allege a plausible negligence claim against either Defendant. *Cf.* Singh, 2024 WL 387553, at *2.

Accordingly, the Court dismisses the claim for failure to expunge against Deputy Sanchez and Dallas County in Count 9.

## V.   CONCLUSION

The Court grants in part and denies in part Deputy Sanchez and Dallas County's motion to dismiss. The Court makes no findings as to the claims against the Dallas County Sheriff's Office. The Court dismisses each of the claims against Deputy Sanchez and Dallas County in Count 1 for failure to state claims upon which relief may be granted. The Court dismisses without prejudice each of the claims against Deputy Sanchez in Counts 2 and 3 based on Cretsinger's representation that she did intend to assert such claims against him. The Court dismisses Count 4 against Deputy Sanchez and Dallas County for failure to state a claim upon which relief may be granted. The Court dismisses the Fourth Amendment claim against Dallas County, the Fifth Amendment and Fourteenth Amendments claims against Deputy Sanchez and Dallas County, and the state constitutional claims against Deputy Sanchez and Dallas County in Count 8 for failure to

---

[6] The Court takes judicial notice of the expungement order for purposes of ruling on the Rule 12(b)(6) motion. *See Ambrosecchia*, 855 F.3d at 954 (stating a court may consider "items subject to judicial notice" and "matters of public record" for purposes of a Rule 12(b)(6) motion); *James v. Kruger*, No. 4:17-cv-00303-RGE, 2018 WL 11272271, at *1 (S.D. Iowa Apr. 4, 2018) ("The Court [] takes judicial notice of the public records available in the electronic case databases maintained by the Iowa Judicial Branch." (citations omitted)).

state claims upon which relief may be granted. The Court finds dismissal of Cretsinger's conversion claim against Deputy Sanchez and Dallas County and Fourth Amendment claim against Deputy Sanchez in Count 8 is not warranted. The Court dismisses Count 9 against Deputy Sanchez and Dallas County for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that Defendants John Doe No. 1 (also known as Dallas County Deputy Sanchez) and Dallas County, Iowa's Motion to Dismiss, ECF No. 6, is **GRANTED IN PART AND DENIED IN PART**:

Count 1 is **DISMISSED** as to Defendants Deputy Sanchez and Dallas County.

Count 2 is **DISMISSED WITHOUT PREJUDICE** as to Defendant Deputy Sanchez.

Count 3 is **DISMSISED WITHOUT PREJUDICE** as to Defendant Deputy Sanchez.

Count 4 is **DISMISSED** as to Defendants Deputy Sanchez and Dallas County.

Count 8 is **DISMISSED** as to Plaintiff's Fourth Amendment claim against Defendant Dallas County.

Count 8 is **DISMISSED** as to Plaintiff's Fifth Amendment and Fourteenth Amendment claims against Defendants Deputy Sanchez and Dallas County.

Count 8 is **DISMISSED** as to Plaintiff's state constitutional claims against Defendants Deputy Sanchez and Dallas County.

Count 9 is **DISMISSED** as to Defendants Deputy Sanchez and Dallas County.

Consistent with the analysis set forth above, all other contested claims against Defendants Deputy Sanchez and Dallas County remain.

**IT IS SO ORDERED.**

Dated this 21st day of March 2024.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE