IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| LISA CRETSINGER,<br><br>       Plaintiff,<br><br>v.<br><br>CITY OF DE SOTO, IOWA, BRANDON CARTER, and JOHN DOES NOS. 2 TO 10,<br><br>       Defendants. | **No. 4:23-cv-00212-RGE-SBJ**<br><br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

## I.    INTRODUCTION

Plaintiff Lisa Cretsinger sues Defendants Brandon Carter and the City of De Soto, Iowa, alleging various federal and state claims. Cretsinger's claims arise from an April 21, 2021 traffic stop during which Cretsinger alleges Carter unlawfully arrested her. Based on the record—including dashcam and bodycam video—the Court determines there is no genuine issue of material fact as to Cretsinger's claims, and Defendants are entitled to judgment as a matter of law.

As such, the Court grants Defendants' motion for summary judgment for the reasons set forth below.

## II.    BACKGROUND

### A.    Factual Background

The following facts are either uncontested or, if contested, viewed in the light most favorable to Cretsinger, the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Courts "may rely on video evidence found in the record where that video evidence 'blatantly contradict[s]' the nonmoving party's characterization of the facts." *Brown v. City of St. Louis*, 40 F.4th 895, 899 (8th Cir. 2022).

When the events surrounding this lawsuit occurred, Carter worked as a law enforcement

officer for the De Soto Police Department. Sparling Dep. 20:5–21:20, Defs.' App. Supp. Defs.'
Mot. Summ. J. 142–143, ECF No. 28-2. Cretsinger was driving a vehicle home after visiting her
mother. Carter Bodycam Footage 00:00:52–00:00:57, ECF No. 28-2 at Defs.' App. 161.

Around 12:17 a.m., Carter initiated his emergency lights and briefly followed Cretsinger's
vehicle. ECF No. 28-2 at Defs.' App. 022 (Iowa Incident Report). Cretsinger pulled her vehicle
over shortly after Carter began following her. Carter Dashcam Footage 00:00:30–00:00:55, ECF
No. 28-2 at Defs.' App. 161. Cretsinger stopped her vehicle on the right side of a highway on-ramp
with about half of her vehicle still on the road. *Id.* Carter approached Cretsinger's vehicle on the
passenger side. Carter Bodycam Footage 00:00:00–00:00:33, ECF No. 28-2 at Defs.' App. 161.
Carter shined a flashlight at Cretsinger through her passenger-side window. *Id.* Cretsinger rolled
the passenger-side window down and handed Carter her driver's license, vehicle registration, and
proof of insurance. *Id.* at 00:00:34–00:00:40; Cretsinger Dep. 5:25–6:2, ECF No. 28-2 at Defs.'
App. 047–048. While taking the documents, Carter's hands slightly enter Cretsinger's vehicle.
Carter Bodycam Footage 00:00:34–00:00:40, ECF No. 28-2 at Defs.' App. 161; Carter Dashcam
Footage 00:01:54–00:02:00, ECF No. 28-2 at Defs.' App. 161. Carter asked Cretsinger "why'd
you run the stop sign," and Cretsinger replied she did not run the stop sign. Carter Bodycam
Footage 00:00:34–00:00:40, ECF No. 28-2 at Defs.' App. 161.

Carter asked Cretsinger where she was coming from, and Cretsinger told him she
was leaving her mom's house. *Id.* at 00:00:52–00:00:57. Carter asked Cretsinger whether she
"had anything to drink tonight" because he could "smell a little bit coming out of the vehicle."
*Id.* at 00:01:26–00:01:55. Cretsinger told Carter "no." *Id.* Carter reiterated he could smell
alcohol, and as such, needed Cretsinger to exit her vehicle and sit in the back of his police car
for a few minutes. *Id.* at 00:01:56–00:02:05. Cretsinger then told Carter, "This is what you're
smelling," while referencing a lid-covered empty travel mug which previously contained wine.

*Id.* at 00:002:06–00:002:16. Cretsinger offered to take a "blow test" if Carter wanted, but indicated she had not "had it"—referring to alcohol—since 5:30 p.m. that night. *Id.* at 00:02:17–00:02:23. Carter again asked Cretsinger whether she had something to drink that night. *Id.* at 00:02:24–00:02:30. This time, Cretsinger replied she had, but earlier in the night. *Id.*

Carter then instructed Cretsinger to turn her vehicle off, exit it, and sit in the back of his police car so he could determine if the alcohol smell was coming from Cretsinger's person. *Id.* at 00:02:31–00:02:43. Carter stated if he determined the smell was coming from Cretsinger, he would request Cretsinger do a field sobriety and preliminary breath test. *Id.* at 00:02:44–00:02:49. Cretsinger replied she had not been drinking and stated, "I could take the test right now, let's just do it right now." *Id.* at 00:02:50–00:02:54. Carter contacted dispatch and asked them to start a twenty-minute timer. *Id.* at 00:02:55–00:03:01 Next, Carter instructed Cretsinger to step out of her vehicle. *Id.* at 00:03:02–00:03:04.

While Cretsinger was standing between her vehicle and Carter's police car, Carter told Cretsinger to shut her car door to prevent a driver from hitting it. *Id.* at 00:03:30–00:03:35. When Cretsinger went to shut her door, she also took off her jacket and placed it in her vehicle, which was still running. *Id.* at 00:03:36–00:03:45. Once more, Carter confirmed Cretsinger had a glass of wine around 5:30 p.m., and Cretsinger stated it was around a six-ounce glass. *Id.* at 00:03:46–00:04:00. Cretsinger stated she also had food to eat after drinking the wine. *Id.* at 00:04:01–00:04:20. When asked, Cretsinger stated she was not on any medications, did not need contacts or glasses when driving, and did not have anything wrong with her knees or anything that would prevent her from taking the field sobriety test. *Id.* at 00:04:46–00:05:03.

Carter explained he could not administer the preliminary breath test until they completed the field sobriety test. *Id.* at 00:05:15–00:05:20. Carter then administered the horizontal gaze test.

00:05:21–00:06:53.[1] Afterward, Carter had Cretsinger do the "heel to toe" portion of the field sobriety test. *Id.* at 00:06:54–00:08:40. Though Carter told Cretsinger to take nine steps during this portion of the test, Cretsinger took five steps before turning around and taking another five steps. *Id.* Carter reminded Cretsinger she was supposed to take nine steps. *Id.* Carter then instructed Cretsinger to redo the test. *Id.* This time, Carter took ten steps before turning around and taking another ten steps. *Id.* While walking heel-to-toe, Cretsinger struggled to stay balanced. *Id.* Cretsinger stated her lack of balance was because she was fifty-eight years old. *Id.*

Carter next administered the "raised leg" portion of the field sobriety test. *Id.* at 00:08:41– 00:11:02. Carter told Cretsinger to not begin performing the test until after he finished explaining his instructions. *Id.* Cretsinger repeatedly started the test before Carter finished his explanation— despite Carter reminding her each time to not start until he was finished explaining. *Id.* Cretsinger also began speaking over Carter as he was explaining the instructions. *Id.* As part of the test, Carter instructed Cretsinger to count out loud by stating, "One-one thousand, two-one thousand, three-one thousand" up until thirty or until he told her to stop. *Id.* Once Carter finished explaining the test, Cretsinger raised her leg and began counting using the format described by Carter, but then began counting by stating, "five thousand, six thousand, seven thousand." *Id.* After saying "twelve thousand" Carter began counting quickly and only stating the number she was on without the "thousand." *Id.* After reaching twenty-five, Carter told Cretsinger to stop. *Id.* Cretsinger appeared unsteady as she was conducting this portion of the test. *Id.* Cretsinger then stated she understood the test, but she did not have any balance and requested to take the preliminary breath test. *Id.*

---

[1] In his deposition, Carter described the horizontal gaze test as "a litmus test" for whether someone is inebriated. Carter Dep. 49:20–50:07, ECF No. 28-2 at Defs.' App. 117. During the horizontal gaze test, Carter looks for an "involuntary movement of [the individual's] eyes known as a nystagmus." *Id.* Carter also stated Cretsinger, during this test, did not "show any signs of nystagmus that [he] knew of," but he still had to administer the remaining portions of the field sobriety test to look "for the totality of the circumstances." *Id.*

Carter explained to Cretsinger she had to wait twenty minutes until after Carter stopped her vehicle before she could take the preliminary breath test. *Id.* at 00:11:03–00:11:08. Carter told Cretsinger she would sit in the back of his vehicle while they waited for the twenty minutes to elapse. *Id.* at 00:11:09–00:11:16. In response, Cretsinger told Carter she was going to sit in her own vehicle. *Id.* Carter told her she would not sit in her vehicle, and Cretsinger replied she wanted to turn her vehicle off. *Id.* Carter told Cretsinger he "would take care of that." *Id.* at 00:11:17– 00:11:19. Cretsinger responded, "No I'm going to turn it off," and took a step toward her vehicle. *Id.* at 00:11:20–00:11:21. Carter then grabbed Cretsinger's elbow and quickly released it after Cretsinger pulled her arm away. *Id.*

Carter attempted to grab Cretsinger's elbow again to place her hands behind her back, but Cretsinger moved away and pulled her arms away from Carter. Carter Dashcam Footage, 00:12:40–00:12:47, ECF No. 28-2 at Defs.' App. 161. Carter gained ahold of Cretsinger's arms and moved her in front of his police vehicle's hood with Cretsinger facing the vehicle. *Id.* at 00:12:48–00:12:55. While Carter was moving her, Cretsinger said, "Okay I'll go in the back," but Cretsinger pulled her arms away from Carter. Carter Bodycam Footage 00:11:30–00:11:33, ECF No. 28-2 at Defs.' App. 161. Cretsinger continued pulling her arms from Carter's grasp while he was attempting to handcuff her. Carter Dashcam Footage 00:12:56–00:13:06, ECF No. 28-2 at Defs.' App. 161. During this time, Cretsinger yelled, "I'm gonna go in the back dude." Bodycam Footage 00:11:34–00:11:45, ECF No. 28-2 at Defs.' App. 161. After Cretsinger pulled her arms away from Carter again, Carter told Cretsinger she was going to go on the ground. *Id.* Cretsinger then pulled her arms out of Carter's grasp. Carter Dashcam Footage 00:13:07–00:13:14, ECF No. 28-2 at Defs.' App. 161. As Carter was attempting to grab Cretsinger's right arm, it appears his forearm contacted the back of Cretsinger's head. *Id.* Carter then attempted to pull Cretsinger's right arm behind her back, but instead, her right arm went into the air and Cretsinger fell to the

ground. *Id.*

Carter then told Cretsinger to stay on the ground and stated he would tase her. Carter Bodycam Footage 00:11:55–00:12:03, ECF No. 28-2 at Defs.' App. 161. Carter was able to handcuff Cretsinger while she was on the ground, and Carter subsequently placed her in the back of his police vehicle. *Id.* at 00:12:04–00:13:00. Carter told Cretsinger she was under arrest for disorderly conduct and interference with official acts. *Id.*

While in the back of Carter's police car, Cretsinger stated she wanted to call her attorney. *Id.* at 00:13:44–00:13:50. Carter replied she would be able to call her attorney "in a moment." *Id.* Carter shortly thereafter administered Cretsinger her *Miranda*[2] rights. *Id.* at 00:14:17–00:14:37. Cretsinger then stated she understood her rights and told Carter her dog was in the back of her vehicle. *Id.* at 00:14:38–00:14:41. Two other officers arrived on the scene and Carter spoke with them. *Id.* at 00:17:52–00:20:15. Carter then walked over to Cretsinger's vehicle and shined a flashlight through her backseat window on the driver's side of the vehicle. *Id.* at 00:20:16–00:20:35.

After Carter returned to his police car, Cretsinger again requested to take the preliminary breath test. *Id.* at 00:22:35–00:22:39. Carter administered the preliminary breath test and Cretsinger blew "0.00"—indicating the test did not detect any alcohol. *Id.* at 00:23:47–00:24:19. Carter began questioning Cretsinger as to why she "wanted to fight with [him]." *Id.* at 00:24:20–00:27:10. Cretsinger eventually told Carter she was not fighting with him, and she was not going to talk anymore. *Id.* at 00:27:11–00:27:20. Cretsinger reiterated she wanted to speak with her attorney and gave Carter permission to retrieve her phone from within her purse, which was still in Cretsinger's vehicle. *Id.* at 00:29:00–00:30:00. Carter walked to Cretsinger's vehicle, opened

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

her passenger-side door, and retrieved Cretsinger's phone from her purse. *Id.* at 00:30:01–00:30:35.

Carter then drove Cretsinger to the "maintenance shed" where the De Soto Police Department is located. *Id.* at 00:30:36–00:35:22; Carter Dep. 64:23–65:9, ECF No. 28-2 at Defs.' App. 120–121. Inside the maintenance shed, there were two vehicles, two lawnmowers, and various tools hanging along the wall. Carter Dashcam Footage 00:36:40–00:36:47, ECF No. 28-2 at Defs.' App. 161. Carter stated he was going to take Cretsinger to the Dallas County jail, but he needed to process her paperwork first. Carter Bodycam Footage 00:35:47–00:35:55, ECF No. 28-2 at Defs.' App. 161. The two then entered a room, which had a door with the words "DE SOTO POLICE" on it. *Id.* at 00:36:35–00:36:45. Carter typed his reports and printed them out. *Id.* at 00:36:46–01:16:27. Carter then drove Cretsinger to the Dallas County jail. *Id.* at 01:19:00–01:31:24. Carter left the Dallas County jail after he turned Cretsinger over to the employees there. *Id.* at 01:32:25–01:35:27.

Carter charged Cretsinger with Assaults on Persons Engaged in Certain Occupations, in violation of Iowa Code § 708.3a(4); Interference with Official Acts, in violation of Iowa Code § 719.1(1)(b); and Failure to Obey a Stop Sign, in violation of Iowa Code § 321.322(1). Defs.' App. 026–027, ECF No. 28-2 (Cretsinger's Booking Card). The prosecutor pursuing these charges dropped the Assaults on Persons Engaged in Certain Occupations charge. *See* Carter Dep. 75:6–24, ECF No. 28-2 at Defs.' App. 123. Cretsinger reached a plea agreement with the State of Iowa regarding the other two charges. Defs.' App. 019, ECF No. 28-2 (Cretsinger's plea agreement). In exchange for Cretsinger pleading guilty to the traffic ticket, the State dismissed the interference charge. *Id.* Per the plea agreement, Cretsinger admitted she failed "to stop/yield upon entering an intersection on or about April 21, 2021 in Dallas County, Iowa." *Id.* ¶ 4. Later, Cretsinger applied for the interference charge to be expunged from her record, and the Iowa District Court for Dallas

County ordered the charge expunged. Defs.' App. 020–021, ECF No. 28-2 (order to expunge).

**B.    Procedural Background**

Cretsinger filed a petition in the Iowa District Court for Dallas County against the City of De Soto, Iowa; the City of De Soto, Iowa Police Department; Brandon Carter; Dallas County, Iowa; the Dallas County, Iowa Sheriff's Office; John Doe 1 (since identified as Dallas County Deputy Sanchez); and John Does 2 through 10. Pl.'s Pet. 3–25, ECF No. 1-1. Cretsinger filed an amended petition. Pl.'s Am. Pet. 28–51, ECF No. 1-1. The amended petition contains claims of tortious false arrest, false imprisonment, violations of the Iowa Constitution, and violations of the Fourth Amendment against all Defendants (Count 1); tortious assault and battery and violations of the Fourth Amendment against the City of De Soto, the De Soto Police Department, Carter, and all John Does (Count 2); state law claims of tortious invasion, trespass, unlawful entry into her vehicle, violations of the Iowa Constitution, and violations of the Fourth Amendment against the City of De Soto, the De Soto Police Department, Carter, and all John Does (Count 3); tortious infliction of emotional distress against all Defendants (Count 4); violations of duties under Iowa Code Chapter 80D and implementing regulations against the City of De Soto and De Soto Police Department (Count 5); negligent hiring, supervision, and retention against the City of De Soto and De Soto Police Department (Count 6); malicious prosecution against the City of De Soto, De Soto Police Department, and Carter (Count 7); conversion, violations of the Iowa constitution, and violations of the Fourth, Fifth, and Fourteenth Amendments against all Defendants (Count 8); and a failure to expunge against all Defendants (Count 9). *Id.* ¶¶ 97–214.

Defendants removed the case. Notice Removal, ECF No. 1. The Court granted the De Soto Police Department's unresisted motion to dismiss. Text Order Grant. Def. De Soto Police Dept.'s Mot. Dismiss, ECF No. 8. The Court then granted in part and denied in part Deputy Sanchez and Dallas County's motion to dismiss. Order Re. Defs.' Mot. Dismiss, ECF No. 16. Afterward,

Cretsinger stipulated to dismiss her claims against Dallas County, Iowa; Dallas County Deputy Sanchez (John Doe I); and Dallas County, Iowa Sheriff's Department. Stip. Dismissal, ECF No. 24; Stip. Dismissal, ECF No. 26. The remaining defendants are the City of De Soto and Carter. Defendants move for summary judgment as to all claims. Defs.' Mot. Summ. J., ECF No. 28. Cretsinger resists and Defendants reply to Cretsinger's resistance. Pl.'s Resist. Mot. Summ. J., ECF No. 32; Defs.' Reply Supp. Mot. Summ. J., ECF No. 35.

The Court finds the parties' briefing and the record adequately present the issues without need for oral argument. *See* LR 7(c); Fed. R. Civ. P. 78(b). The Court decides Defendants' motion for summary judgment as detailed below.

Additional facts are set forth below as necessary.

## III.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the Court must grant a party's motion for summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists where the issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

When analyzing whether a party is entitled to summary judgment, the "nonmoving party receives the benefit of all reasonable inferences supported by the evidence but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.'" *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cnty.*, 621 F.3d 740, 743 (8th Cir. 2010)). "The plaintiff must substantiate [the] allegations with sufficient

probative evidence that would permit a finding in [the plaintiff's] favor." *Smith v. Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008) (internal quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and the moving party is entitled to judgment as a matter of law. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (en banc) (internal quotation marks omitted) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009)).

## IV.    DISCUSSION

### A.    Count 1: Iowa Torts of False Arrest and False Imprisonment; Unreasonable Seizure in Violation of the Fourth Amendment of the Constitution of the United States (False Arrest and Prolonged Traffic Stop); and Violation of Article I, Section Eight of the Iowa Constitution

In Count 1, Cretsinger alleges Defendants falsely arrested and imprisoned her, violated the Fourth Amendment of the Constitution of the United States, and violated Article I, Section Eight of the Iowa Constitution. ECF No. 1-1 ¶¶ 97–109.[3] Defendants argue the record shows Carter had probable cause to stop Cretsinger's vehicle, reasonable suspicion necessary to administer a field sobriety test, and probable cause to arrest Cretsinger. ECF No. 31 at 13–16. In the alternative, Defendants argue Carter is entitled to qualified immunity. *Id.* at 14–15. In response, Cretsinger argues there exist genuine issues of material fact as to whether Carter smelled alcohol and had probable cause for conducting an operating-while-intoxicated investigation. ECF No. 35 at 5, 16–18. Cretsinger also appears to argue Carter stopped Cretsinger for an unconstitutional amount of time. *Id.* at 15–17.

A reasonable jury could not conclude Defendants are liable under Count 1 for the reasons outlined below.

---

[3] Cretsinger's amended petition alleges claims against more than just Carter and the City of De Soto. *See* ECF No. 1-1. For ease of reading however, when the Court uses the term "Defendants" within the Discussion section, the Court is only referencing Carter and the City of De Soto.

### 1.  False arrest and false imprisonment under Iowa law

#### a.  Carter

Under Iowa law, "[f]alse arrest and false imprisonment are legally indistinguishable." *Davis v. Dawson*, 33 F.4th 993, 1001 (8th Cir. 2022) (citing *Kraft v. City of Bettendorf*, 359 N.W.2d 466, 469 (Iowa 1984)). "[F]alse arrest . . . describes the setting for false imprisonment when it is committed by a[ ] [peace] officer or by one who claims the power to make an arrest." *Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 768 (Iowa 2002) (second and third alterations in original) (internal quotation marks and citations omitted). "The essential elements of the tort of false arrest are (1) detention or restraint against one's will and (2) unlawfulness of the detention or restraint." *Children v. Burton*, 331 N.W.2d 673, 678–79 (Iowa 1983). For false arrest, "[i]f the officer acts in good faith and with reasonable belief that a crime has been committed and the person arrested commit it, his actions are justified and liability does not attach." *Children v. Burton*, 331 N.W.2d 673, 680 (Iowa 1983).

A peace officer may arrest an individual "[f]or a public offense committed or attempted in the peace officer's presence." Iowa Code § 804.7(1)(a). A "public offense" is defined as "that which is prohibited by statute and is punishable by fine or imprisonment." *Id.* § 701.2. Under Iowa Code § 719.1(1)(b), "[i]nterference with official acts is a simple misdemeanor." "A person commits interference with official acts when the person knowingly resists or obstructs anyone known by the person to be a peace officer . . . whether paid or volunteer . . . in the performance of any act which is within the scope of the lawful duty or authority of that officer, . . . ." *Id.* § 719.1(1)(a). Under Iowa law, an individual may not operate a vehicle while under the influence of a drug or certain amount of alcohol. *Id.* § 321J.2.

When Carter arrested Cretsinger, Carter told Cretsinger she was under arrest for interference with official acts and disorderly conduct. Carter Bodycam Footage 00:12:04–

00:13:00, ECF No. 28-2 at Defs.' App. 161. Cretsinger repeatedly asked Carter why he was doing this—clearly demonstrating she did not wish to be detained, thus satisfying the first element of false arrest. *Id.* The underlying question, therefore, is whether Carter had the authority to detain Cretsinger for any violation. Based on the record, a reasonable jury could not find Carter unlawfully detained Cretsinger.

Leading up to her arrest, Carter stated he smelled alcohol after Cretsinger rolled down her passenger-side window. *Id.* at 00:01:26–00:01:55. Cretsinger eventually told Carter she had a glass of wine earlier that night—a contradiction of her earlier statement that she had not had any alcohol whatsoever that day. *Id.* at 00:01:56–00:02:30. After Carter instructed Cretsinger to sit in the back of his police vehicle so he could determine if the alcohol smell was coming from Cretsinger's person, Cretsinger volunteered to take "the test." *Id.* at 00:02:31–00:02:54.

During the horizontal gaze nystagmus test, Carter did not witness involuntary movement of Cretsinger's eyes, which could indicate intoxication. Carter Dep. 49:20–50:07, ECF No. 28-2 at Defs.' App. 117. Cretsinger, however, failed to follow Carter's instructions during the "heel to toe" portion of the field sobriety test. Carter Bodycam Footage 00:06:54–00:08:40, ECF No. 28-2 at Defs.' App. 117. Cretsinger first walked fewer steps than instructed. *Id.* After Carter reminded Cretsinger of the correct number of steps to take, Cretsinger proceeded to walk more steps than instructed. *Id.* Carter also appeared unbalanced while performing this test. *Id.* Next, Cretsinger repeatedly failed to follow Carter's instructions during the "raised leg" portion of the field sobriety test. *Id.* at 00:08:41–00:11:02. Cretsinger attempted to start the test multiple times before Carter finished explaining his instructions, despite Carter telling Cretsinger to wait to begin until he fully explained the test. *Id.* After Carter fully explained the instructions and Cretsinger began the test, Cretsinger appeared unstable. *Id.* Cretsinger additionally did not follow Carter's instructions as to the correct format for counting aloud, and Cretsinger rushed through the test. *Id.*

At that time, Carter had at least a reasonable suspicion Cretsinger was under the influence of alcohol based on the smell of alcohol,[4] Cretsinger's statement she had a glass of wine earlier that night, Cretsinger's failure to follow instructions, and Cretsinger's imbalance. Carter instructed Cretsinger to sit in the back of his police vehicle to continue to observe her for intoxication while they waited for his timer to elapse and so he could administer the preliminary breath test. *Id.* at 00:11:03–00:11:16. Instead of sitting in the back of his vehicle, Cretsinger told Carter she would wait in her own vehicle. *Id.* Carter told her no. *Id.* Cretsinger then said she wanted to turn her vehicle off, and Carter responded he would do that for her. *Id.* at 00:11:17–00:11:21. Cretsinger stated she would do it herself and began moving toward her vehicle. *Id.* Carter attempted to prevent her from doing so by grabbing her elbow at which point Cretsinger quickly pulled her arm back. *Id.* Cretsinger began raising her voice, and Carter attempted to place her in handcuffs. Carter Dashcam Footage, 00:12:40–00:13:14, ECF No. 28-2 at Defs.' App. 161 Cretsinger repeatedly resisted being placed in handcuffs and continually pulled her arms out of Carter's hold. *Id.*

During these events, it was clear Carter was a peace officer based on his uniform and police vehicle. Cretsinger thus "knowingly resist[ed]" Carter (a peace officer) during "the performance of . . . [Carter's] dut[ies]" in investigating whether Cretsinger was operating a vehicle while intoxicated. Iowa Code § 719.1(1)(a); *see* Iowa Code § 321J.2. As such, Carter had the authority to place Cretsinger under arrest for interference with official acts. *See id.* § 804.7(1)(a). Cretsinger's negative preliminary breath test fails to cure her previous actions wherein she interfered with Carter's official duties.

---

[4] In reference to the smell of alcohol, Cretsinger told Carter the smell was coming from her travel mug, which previously contained wine. Carter Bodycam Footage 00:002:06–00:002:16, ECF No. 28-2 at Defs.' App. 161. Though Cretsinger now disputes there being any smell of alcohol, her statements at the time acknowledged Carter was smelling alcohol, but the source might be something other than Cretsinger's person.

Because Carter had the authority to place Cretsinger under arrest for interference with official acts, the Court declines to discuss whether probable cause existed supporting Carter's arrest for disorderly conduct. Based on the record, a reasonable jury could not find Carter falsely arrested Cretsinger, and Carter is entitled to judgment as a matter of law. *Cf. Torgerson*, 643 F.3d at 1042–43.

> b.    The City of De Soto

Under the doctrine of respondeat superior, an "employer is vicariously liable for the negligent acts of its employees." *Dickens v. Associated Anesthesiologists, P.C.*, 709 N.W.2d 122, 125 (Iowa 2006) (citation omitted). The doctrine of respondeat superior requires "proof of an employer/employee relationship[ ] and proof that the injury occurred within the scope of that employment." *Godar v. Edwards*, 588 N.W.2d 701, 705 (Iowa 1999) (internal quotation marks and citations omitted). "One of the limitations of the doctrine is that the employer has no liability unless the employee is liable." *Dickens*, 709 N.W.2d at 125.

During Carter's interactions with Cretsinger he was employed by the De Soto Police Department, and thus Carter was an employee of the City of De Soto. The City of De Soto has no liability under Count 1 for false arrest because a reasonable jury, as discussed above, could not find Carter falsely arrested Cretsinger. *Cf. id.*

> **2.    Unreasonable seizure in violation of the Fourth Amendment (false arrest and prolonged traffic stop)**

>> a.    Carter

Cretsinger asserts Carter violated her Fourth Amendment rights by falsely arresting her and by unconstitutionally prolonging the traffic stop. ECF No. 35 at 16–18.

A reasonable jury could not find Carter's arrest of Cretsinger violated her Fourth Amendment rights based on a false arrest claim. "In connection to a Fourth Amendment false

arrest claim, the relevant inquiry is whether the officers had probable cause to arrest [the plaintiff]." *Smithson v. Aldrich*, 235 F.3d 1058, 1062 (8th Cir. 2000). Here, as discussed above, Cretsinger disobeyed Carter's instructions to sit in his police vehicle, attempted to move toward her own vehicle when instructed to sit in Carter's police vehicle, and resisted when Carter attempted to place her in handcuffs. Carter Bodycam Footage 00:11:03–13:00, ECF No. 28-2 at Defs.' App. 161. These acts interfered with Carter's official duties in investing whether Cretsinger was under the influence of alcohol while driving. *See* Iowa Code § 321J.2. The record demonstrates Carter had probable cause to arrest Cretsinger, and thus Carter's arrest of Cretsinger did not violate the Fourth Amendment. *Cf. Smithson*, 235 F.3d at 1062.

Similarly, a reasonable jury could not conclude Carter unconstitutionally extended the traffic stop. "Any traffic violation, however minor, provides probable cause for a traffic stop." *United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012) (citation omitted). "An officer may expand the scope of a traffic stop beyond the initial reason for the stop and prolong the detention if the driver's responses and the circumstances give rise to a reasonable suspicion that criminal activity unrelated to the stop is afoot." *United States v. Chavez Loya*, 528 F.3d 546, 553 (8th Cir. 2008). When determining whether an officer has an objectively reasonable suspicion, courts "examine the totality of the circumstances in light of the [officer's] experience." *Id.*

Here, Carter pulled Cretsinger over for failing to fully stop at a stop sign. Cretsinger does not dispute Carter, "having viewed Cretsinger fail to fully stop had cause to make a traffic stop." ECF No. 35 at 15. During the traffic stop, Carter stated he smelled alcohol after Cretsinger rolled down her passenger-side window. Carter Bodycam Footage 00:01:26–00:01:55, ECF No. 28-2 at Defs.' App. 161. Initially, Cretsinger told Carter she had not consumed alcohol that night. *Id.* Soon after, Cretsinger clarified she had a glass of wine earlier in the night, and a travel mug in her vehicle previously had wine it. *Id.* at 00:02:06–00:02:30. Based on these facts, Carter had a reasonable

suspicion Cretsinger might be under the influence of alcohol, and thus Carter had the authority to expand the scope of his investigation. *Cf. Chavez Loya*, 528 F.3d at 553. There is no Fourth Amendment violation for a prolonged traffic stop on these facts.

b.    The City of De Soto

"It is well established that a municipality cannot be liable under § 1983 under a respondeat superior theory, that is, solely because it employs a tortfeasor." *Robbins v. City of Des Moines*, 984 F.3d 673, 681 (8th Cir. 2021) (internal quotation marks and citations omitted). "A municipality may only be liable for a constitutional violation resulting from (1) an official municipal policy[,] (2) an unofficial custom, or (3) failure to train or supervise." *Id.* at 681–82 (citation omitted).

As a matter of law, the City of De Soto is not liable for a Fourth Amendment violation because Cretsinger fails to show a genuine issue of material fact as to a constitutional violation by Carter in this respect. *See Stockley v. Joyce*, 963 F.3d 809, 823 (8th Cir. 2020) ("Without a constitutional violation by the individual officers, there can be no § 1983 or *Monell* . . . liability." (omission in original) (citation omitted)).

3.    **Iowa Constitution**

The amended petition alleges Defendants' "unlawful arrest and false imprisonment . . . violated [Cretsinger's] rights pursuant to the Iowa Constitution article I section 8." ECF No. 1-1 ¶ 106. Cretsinger, however, does not mention the Iowa Constitution in her resistance. *See* ECF No. 35. Even if Cretsinger discussed the alleged violation of the Iowa Constitution, the Iowa Supreme Court "no longer recognize[s] a standalone cause of action for money damages under the Iowa Constitution unless authorized by common law, an Iowa statute, or the express terms of a provision of the Iowa Constitution." *Burnett v. Smith*, 990 N.W.2d 289, 307 (Iowa 2023) (declining to recognize a constitutional tort claim under article I, section 8 of the Iowa Constitution). Cretsinger points to no such cause of action. *See* ECF No. 35. As such, Cretsinger

may not advance her state constitution claims against Defendants. *See Venckus v. City of Iowa City*, 990 N.W.2d 800, 803 (Iowa 2023) (applying *Burnett* to find "[t]he plaintiff's constitutional tort claims cannot go forward" under article I, section 8); *see also Galanakis v. City of Newton, Iowa*, No. 4:23-cv-00044-SHL-SBJ, 2024 WL 606235, at *12 (S.D. Iowa Feb. 8, 2024) (finding *Burnett* applies retroactively and may be raised sua sponte).

The Court grants Defendants' motion as to Count 1.

**B.    Count 2: Iowa Torts of Assault and Battery; Unreasonable Seizure in Violation of the Fourth Amendment of the Constitution of the United States (Excessive Force)**

In Count 2, Cretsinger alleges assault, battery, and related violations of the Fourth Amendment of the Constitution of the United States. ECF No. 1-1 ¶¶ 110–22. Defendants argue Carter's actions are justified because he used a reasonable level of force necessary to effectuate Cretsinger's arrest. ECF No. 31 at 17–19. In Cretsinger's resistance, she clarifies her Fourth Amendment claim is for use of excessive force. ECF No. 35 at 22. Cretsinger argues she complied with all of Carter's instructions, but nonetheless was "assaulted by . . . Carter and thrown to the ground and threatened with a Taser." *Id.* at 19–20. Cretsinger further points to her expert's report as evidence of Carter's excessive use of force. *Id.* at 23.

**1.    Assault and battery under Iowa law**

Under Iowa common law, assault occurs when a plaintiff proves "(1) an act intended to put another in fear of physical pain or injury; [or] (2) an act intended to put another in fear of physical contact which a reasonable person would deem insulting or offensive; and the victim reasonably believes that the act may be carried out immediately." *White v. Harkrider*, 990 N.W.2d 647, 656 (Iowa 2023) (*Greenland v. Fairtron Corp.*, 500 N.W.2d 36, 38 n.4 (Iowa 1993)). "[A]cts threatening violence to the person of another, coupled with the means, ability, and intent to commit the violence threatened, constitute an assault." *Id.* (citation omitted). An individual is liable for

battery if the individual intends to cause a harmful or offensive contact with another and an offensive or harmful contact occurs. *Nelson v. Winnebago Indus., Inc.*, 619 N.W.2d 385, 388–89 (Iowa 2000). Battery does not require a physical injury. *Id.*

Iowa Code § 804.8(1) states, "A peace officer, while making a lawful arrest, is justified in the use of any force which the peace officer reasonably believes to be necessary to effect the arrest or to defend any person from bodily harm while making the arrest." Iowa Code § 804.8(1). "Iowa courts apply an objective reasonableness standard to an officer's use of force under [§ 804.8]." *Parrish v. Dingman*, 912 F.3d 464, 469 (8th Cir. 2019) (citing *Chelf v. Civil Serv. Comm'n of Davenport*, 515 N.W.2d 353, 355–56 (Iowa Ct. App. 1994)).

"Objective reasonableness is 'judged from the perspective of a reasonable officer on the scene, rather than the 20/20 vision of hindsight.'" *Id.* at 467 (*Graham v. Connor*, 490 U.S. 386, 396 (1989)). When analyzing whether an officer's use of force was objectively reasonable, courts may consider

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Zubrod v. Hoch*, 907 F.3d 568, 577 (8th Cir. 2018) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)).

Cretsinger's claims of assault and battery under Iowa law fail because there is no genuine dispute of material fact as to the objective reasonableness of Carter's use of force. As discussed above, Carter had a reasonable suspicion Cretsinger had been operating a vehicle under the influence of alcohol based on her statements, inability to follow instructions, and difficulty in completing the "heel to toe" and "raised leg" portions of the field sobriety tests.

After an exchange where Carter told Cretsinger to wait in the back of his vehicle, Cretsinger

took a step toward her vehicle. Carter Bodycam Footage 00:11:03–00:11:16, ECF No. 28-2 at Defs.' App. 161. Carter then grabbed Cretsinger's elbow to prevent her from moving toward her vehicle. *Id.* Cretsinger pulled away from Carter while raising her voice. *Id.* Carter repeatedly attempted to handcuff Cretsinger, and Cretsinger continued resisting. Carter Dashcam Footage 00:12:56–00:13:14, ECF No. 28-2 at Defs.' App. 161. Cretsinger fell to the ground, at which point Carter instructed Cretsinger to stay on the ground and stated "I will tase you." Carter Bodycam Footage 00:11:55–00:13:00, ECF No. 28-2 at Defs.' App. 161. Carter then hand cuffed Cretsinger and placed her in the back of the police vehicle. *Id.*

During these events, a reasonable officer would have reasonable suspicion Cretsinger was under the influence of alcohol and wanted to return to her vehicle. It was objectively reasonable for an officer in Carter's position to prevent Cretsinger's return to the vehicle, where she could flee or access a weapon. Prior to using any force, Carter told Cretsinger to get in the back of his police vehicle. Cretsinger refused. Carter then attempted to handcuff Cretsinger. Cretsinger resisted. When Cretsinger fell on the ground, Carter threatened to use—but did not use—his taser. Cretsinger does not allege she was physically injured during these events. *See* ECF Nos. 32, 35. As such, given the above circumstances, there is no genuine dispute of material fact as to the objective reasonableness regarding Carter's use of force. Therefore, Carter is entitled to judgment as a matter of law as to Count 2—the dashcam and bodycam footage shows his use of force was reasonable given the circumstances.

Cretsinger's reliance on a proffered expert report does not alter this analysis. With respect to expert testimony, "courts must guard against invading the province of the jury on a question which the jury was entirely capable of answering without the benefit of expert opinion." *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 725 (8th Cir. 2015) (citation omitted). Further, "expert testimony on legal matters is not admissible." *S. Pine Helicopters, Inc. v. Phoenix Aviation*

*Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003).

The specific portion of the report Cretsinger cites states in conclusory fashion, "The force applied by Carter was not necessary for a minor traffic violation and could have been de-escalated." ECF No. 35 at 23 (quoting Brooks' Report 3, Pl.'s App. Supp. Resist. Mot. Summ. J. 03, ECF No. 32-3). Later in Cretsinger's resistance, she argues the report shows "Carter lacked probable cause for an arrest and that based on 'the totality of the facts and circumstances' Carter's arrest and use of physical force 'were not necessary,' 'were objectively unreasonable' and were 'inconsistent with generally accepted police practices.'" *Id.* at 28 (quoting Brooks' Report 9, ECF No. 32-3 at Pl.'s App. 09). These statements by Brooks attempt to reach the ultimate conclusion of Cretsinger's claims in Count 2—whether Carter's use of force was reasonable. Such statements both invade the province of the jury and are legal conclusions. In either scenario, these statements cannot be considered on a motion for summary judgment. *See Smith v. Kilgore*, 926 F.3d 479, 485 (8th Cir. 2019) ("The district court must base its determination regarding the presence or absence of a material issue of factual dispute on evidence that will be admissible at trial." (quoting *Firemen's Fund Ins. Co. v. Thien*, 8 F.3d 1307, 1310 (8th Cir. 1993)); *see also JRT, Inc. v. TCBY Sys., Inc.*, 52 F.3d 734, 737 (8th Cir. 1995) ("[In] a successful summary judgment defense . . . [the non-moving party] must demonstrate that at trial it may be able to put on admissible evidence proving its allegations.").

The City of De Soto is likewise entitled to judgment as a matter of law because Carter, its employee, is not liable. *See supra* Part IV.A.1.b.

### 2. Unreasonable seizure in violation of the Fourth Amendment (excessive force)

In assessing Fourth Amendment excessive force claims, courts apply an objective reasonableness standard. *Parrish*, 912 F.3d at 467. As discussed above, Carter's use of force was

objectively reasonable under these circumstances. Carter is thus not liable for excessive use of force in violation of the Fourth Amendment. Correspondingly, the City of De Soto is not liable. *See supra* Part IV.A.2.b.

As such, the Court grants Defendants' motion for summary judgment as to Count 2.

### C.     Count 3: Iowa Torts of Invasion of Privacy and Trespass; Unreasonable Search in Violation of the Fourth Amendment of the Constitution of the United States

In Count 3, Cretsinger alleges tortious invasion of privacy, trespass, and unlawful entry into Cretsinger's vehicle as well as related violations of the Fourth Amendment. ECF No. 1-1 ¶¶ 123–35. More specifically, Cretsinger argues in her resistance "Carter placed [his] hand and head into Cretsinger's car when he was only making a traffic stop," and "[a]t the time of the intrusion into the vehicle, no investigation or even probable cause to investigate any crime other than a routine traffic stop existed." ECF No. 35 at 4, 18–19. Cretsinger cites the first two minutes of the dashcam footage in support of these arguments. *Id.* at 19. Defendants argue Carter's actions do not constitute tortious invasion, trespass, or unlawful entry because he did not enter Cretsinger's car until he had permission. ECF No. 31 at 6. Defendants also argue Carter's actions do not constitute an unconstitutional search because his actions fall under various exceptions to the Fourth Amendment's general prohibitions against warrantless searches. *Id.* at 4–8.

#### 1.     Tortious invasion of privacy, trespass, and unlawful entry under Iowa law

Under Iowa law, to establish a tortious invasion of privacy, the plaintiff must demonstrate 1) "the plaintiff has a right to expect privacy," and 2) the defendant's act must be "highly offensive to a reasonable person." *Koeppel v. Speirs*, 808 N.W.2d 177, 181 (Iowa 2011) (citations omitted).

For trespass, "[t]he general rule in Iowa is that '[e]very unauthorized entry is a trespass, regardless of the degree of force used, even if no damage is done, or the injury is slight . . . . It will

be presumed that injury resulted even if it was no more than the trampling of herbage." *White*, 990 N.W.2d at 654 (quoting *Iowa State Highway Comm'n v. Hipp*, 147 N.W.2d 195, 199 (Iowa 1966)). The plaintiff must additionally show the defendant was "not rightfully upon the property of another, but enter[ed] it without consent, either express or implied, of the owner or occupier." *Id.* (quoting *Hipp*, 147 N.W.2d at 199). Where a law enforcement official has a legal right to enter another's property, there is no trespass. *See State v. Van Rees*, 246 N.W.2d 339, 343 (Iowa 1976).

Cretsinger does not cite law establishing unlawful entry as a standalone tort, nor does Cretsinger mention the words "unlawful entry" in her resistance. *See* ECF Nos. 32, 35. The Court is not aware of authority providing a claim for unlawful entry is unique or separate from the analysis for tortious invasion of privacy or trespass. As such, the Court does not address Cretsinger's claim for "unlawful entry" further.

Contrary to Cretsinger's arguments, Carter did not move his head into Cretsinger's vehicle during his first interaction with her. At most, Carter's hands enter Cretsinger's vehicle up to his wrists to receive the documents Cretsinger handed him. Carter Dashcam Footage 00:01:54–00:02:00, ECF No. 28-2 at Defs.' App. 161. Under these facts, no reasonable jury could conclude Carter's actions constitute tortious invasion of privacy or trespass.

Regarding tortious invasion of privacy, even if Cretsinger had an expectation of privacy, Carter's actions were not "highly offensive to a reasonable person." *Koeppel*, 808 N.W.2d at 181. During Carter's first interaction with Cretsinger, Carter merely reached into Cretsinger's vehicle only so far as necessary to receive the documents Cretsinger was handing him. As to trespass, Carter—to the extent he was even "upon" Cretsinger's property—had a legal right to "enter" Cretsinger's property: to receive the documents Cretsinger handed Carter during his lawful traffic stop. *See* Iowa Code § 321.492.

Likewise, without an underlying tort, the City of De Soto is not liable for tortious invasion

of privacy, trespass, or unlawful entry. *See supra* Part IV.A.1.b.

### 2.    Unreasonable search in violation of the Fourth Amendment

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011) (quoting *Mincey v. Arizona,* 437 U.S. 385, 390 (1978)). "A search occurs under the Fourth Amendment when . . . 'the government violates a subjective expectation of privacy that society recognizes as reasonable.'" *Arnzen v. Palmer*, 713 F.3d 369, 372 (8th Cir. 2013) (quoting *Kyllo v. United States,* 533 U.S. 27, 31–33 (2001)).

A reasonable jury could not find Carter conducted a "search" within the meaning of the Fourth Amendment. Carter did not go through Cretsinger's belongings without permission and only saw the interior of Cretsinger's vehicle that was in plain view. *See Nikolas v. City of Omaha*, 605 F.3d 539, 546 (8th Cir. 2010) ("[V]isual observation is no 'search' at all." (quoting *Kyllo*, 533 U.S. at 32)). As such, Carter's actions in receiving the documents from Cretsinger did not violate the Fourth Amendment's prohibition against unreasonable searches.

Without a constitutional violation by Carter, the City of De Soto is not liable. *See supra* Part IV.A.2.b.

The Court grants Defendants' motion as to Count 3.

### D.    Count 4: Iowa Tort of Intentional Infliction of Emotional Distress

Count 4 of Cretsinger's petition alleges a claim of intentional infliction of emotional distress. ECF No. 1-1 ¶¶ 136–52. Under Iowa law, "[a] claim of intentional infliction of emotional distress requires the plaintiff to prove: (1) the defendants engaged in extreme and outrageous conduct; (2) the defendants intentionally caused, or recklessly disregarded the likelihood of

causing, severe or extreme emotional distress to the plaintiff; (3) the plaintiff in fact suffered severe or extreme emotional distress; and (4) the defendants' extreme and outrageous conduct was the actual and proximate cause of the severe or extreme emotional distress." *White*, 990 N.W.2d at 652. "[T]he alleged tortious conduct must be 'so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Fuller v. Loc. Union No. 106 of the United Bhd. of Carpenters & Joiners*, 567 N.W.2d 419, 423 (Iowa 1997)). For intentional infliction of emotional distress claims, "it is for the court to determine in the first instance, as a matter of law, whether the conduct complained of may reasonably be regarded as outrageous." *Lennette v. State*, 975 N.W.2d 380, 392 (Iowa 2022) (quoting *Cutler v. Klass, Whicher & Mishne*, 473 N.W.2d 178, 183 (Iowa 1991)).

Under Iowa law, courts "that have found substantial evidence of emotional harm have had direct evidence of either physical symptoms of the distress or a clear showing of a notably distressful mental reaction caused by the outrageous conduct." *Smith*, 851 N.W.2d at 30 (internal quotation marks and citation omitted). Cretsinger provides neither. Cretsinger does not cite evidence suggesting she experienced physical symptoms stemming from her alleged emotional distress, nor does Cretsinger argue in her brief that she suffered a distressful mental reaction.

Instead, Cretsinger argues in conclusory fashion Carter's actions constitute intentional infliction of emotional distress because Carter 1) physically assaulted her, 2) threw her on the ground, 3) threatened to tase her, and 4) brought her to the De Soto Police Department where they were the only two individuals present. ECF No. 35 at 24. Cretsinger cites no authority for the proposition these actions, accepted as true, constitute intentional infliction of emotional distress. Under the circumstances present within the record, Carter's actions do not "go beyond all possible bounds of decency, . . . ." *White*, 990 N.W.2d at 652.

Without an underlying tort by Carter, the City of De Soto is not liable. *See supra* Part

IV.A.1.b.

The Court thus grants Defendants' motion for summary judgment as to Count 4.

### E.    Count 5: Iowa Code Chapter 80D

In Count 5, Cretsinger alleges Defendants breached their statutory duties under Chapter 80D of the Iowa Code and the regulations promulgated thereafter. ECF No. 1-1 ¶¶ 153–69. Chapter 80D, in part, permits the governing body of a city, a county, or the state of Iowa to establish a force of reserve police officers and sets forth the training and supervising requirements of the reserve officers. Defendants argue Chapter 80D does not provide for a private cause of action, and thus Cretsinger's claim fails as a matter of law. ECF No. 31 at 8–11. In her resistance, Cretsinger fails to dispute Carter's contention there is no private right of action under Chapter 80D. ECF No. 35 at 27–28. Instead, Cretsinger argues Chapter 80D provides "evidence of the standard[s] of conduct for . . . evaluating negligence and a breach of the standard of conduct." *Id.* at 27.

Given Cretsinger's failure to show a private right of action exists under Chapter 80D, the Court grants Defendants' motion for summary judgment as to Count 5.

### F.    Count 6: Iowa Torts of Negligent Hiring, Supervision, and Retention

Cretsinger's amended petition alleges in Count 6 the City of De Soto is liable for negligent hiring, supervision, and retention. ECF No. 1-1 ¶¶ 170–85. The City of De Soto argues it was not negligent when hiring, supervising, or retaining Carter; Cretsinger mischaracterizes Carter's criminal background; and it is not liable because there is no underlying tort by Carter. ECF No. 31 at 20–21. In response, Cretsinger argues the City of De Soto is liable because it hired Carter despite his criminal history; misrepresented its oversight of Carter to the Iowa Law Enforcement Academy; and failed to adequately train Carter, as demonstrated by his actions. ECF No. 35 at 7–11, 27.

"A claim of negligent hiring, retention, or supervision requires proof of *two kinds* of

tortious misconduct." *Randolph v. Aidan, LLC*, 6 N.W.3d 304, 309 (Iowa 2024). The plaintiff must prove "*both* (1) *the employer's* negligence in hiring, retaining, or supervising the unfit employee *and* (2) negligence or other tortious misconduct *by the employee.*" *Id.* The Iowa Supreme Court has described the second part as requiring "the plaintiff to 'prove a case within a case.'" *Id.* (quoting *Struck v. Mercy Health Servs.-Iowa Corp.*, 973 N.W.2d 533, 544 (Iowa 2022)).

Cretsinger's Count 6 fails because she has not, as discussed above, demonstrated a reasonable jury could find tortious conduct by Carter. *Cf. id.* As such, the City of De Soto cannot be liable under a theory of negligent hiring, supervision, and retention.

The Court grants Defendants' motion as to Count 6.

### G.    Count 7: Iowa Tort of Malicious Prosecution

In Count 7, Cretsinger alleges Defendants are liable for malicious prosecution. ECF No. 1-1 ¶¶ 186–97. Defendants argue they are not liable for malicious prosecution because Carter had probable cause to arrest Cretsinger for Interference with Official Acts. ECF No. 31 at 22. In her resistance, Cretsinger does not respond to Defendants' arguments. *See* ECF No. 35.

To prove a claim for malicious prosecution, a plaintiff must show "(1) a previous prosecution, (2) instigation of that prosecution by the defendant, (3) termination of that prosecution by acquittal or discharge of the plaintiff, (4) want of probable cause, (5) malice on the part of [the] defendant for bringing the prosecution, and (6) damage to [the] plaintiff." *Venckus v. City of Iowa City*, 990 N.W.2d 800, 808 (Iowa 2023), *as amended* (July 20, 2023) (alterations in original) (quoting *Linn v. Montgomery*, 903 N.W.2d 337, 345 (Iowa 2017)).

As discussed above, a reasonable jury could not conclude Carter had "want of probable cause" for his arrest of Cretsinger. The City of De Soto is similarly not liable, given Carter's lack of liability. *See supra* Part IV.A.1.b.

Accordingly, the Court grants Defendants' motion as to Count 7.

**H.    Count 8: Iowa Tort of Conversion; Violations of the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States (Unlawful Seizure)**

In Count 8, Cretsinger alleges Defendants are liable for conversion, violations of the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States, and violations of the Iowa Constitution. ECF No. 1-1 ¶¶ 198–209. These claims are based on former-Defendant Deputy Sanchez's actions in removing Cretsinger's dog, Norman, from her car, taking Norman to an animal shelter, and telling the animal shelter Norman's owner was unknown. *Id.* Defendants argue that despite the amended petition claiming "all Defendants" are liable, there is no claim against Carter or the City of De Soto for exercising unlawful control over Norman. ECF No. 31 at 13. Cretsinger does not address Count 8 in her resistance. *See* ECF No. 35.

Nothing in the record suggests Carter or the City of De Soto unlawfully possessed or seized Norman. Nor does Cretsinger argue in her resistance Defendants are liable for the events concerning Norman. *See id.* Accordingly, no reasonable jury could find Defendants are liable under Count 8.

The Courts grants Defendants' motion as to Count 8.

**I.    Count 9: Failure to Expunge**

In Count 9, Cretsinger alleges Defendants did not comply with an expungement order entered by the Iowa District Court for Dallas County and are thus liable for a "[f]ailure to [e]xpunge. "ECF No. 1-1 ¶¶ 210–14. Defendants argue Iowa Code § 901C.2(1)—detailing the requirements necessary for a court to enter an expungement order—does not contain a private right of action. ECF No. 31 at 11–12. Defendants further assert the expungement order required the Clerk of Court to expunge Cretsinger's record, not Defendants. *Id.* at 12. Cretsinger does not respond. *See* ECF No. 35.

The expungement order states, "[T]he Clerk of Court shall expunge the record in the above

captioned matter pursuant to section 901C.2, [of] the Code." ECF No. 28-2 at Defs.' App. 020. Cretsinger does not argue the expungement order imposes a duty upon Defendants, nor does the expungement order appear to impose such a duty. *See id.*; ECF No. 35. Given the record, no reasonable jury could find Defendants' liable under Count 9.

Accordingly, the Court grants Defendants' motion as to Count 9.

### J.    The Remaining "John Does"

Cretsinger's claims against the unidentified John Does cannot proceed past this point. "Dismissal is proper only when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention." *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985). Cretsinger previously identified John Doe 1 as Deputy Sanchez of the Dallas County Police Department. *See* ECF No. 1-1 ¶ 7. Cretsinger has not identified others listed as John Does 2 to 10. The record also does not indicate other possible John Does who may be liable under Cretsinger's claims.

As such, the Court dismisses the remaining John Does.

## V.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendants the City of De Soto, Iowa, and Brandon Carter's Motion for Summary Judgment, ECF No. 28, is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants John Does 2 to 10 are dismissed from the case.

**IT IS SO ORDERED.**

Dated this 8th day of May, 2025.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE